Diane G. **EMERY** and Patricia
L. **Young,** Plaintiffs,

v.

**CARAVAN OF DREAMS,
INC.,** Defendant.

**Civ. No. 3:94–CV–0985–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1995.

Patricia Young, Michael P. Metcalf, Law Office of Windle Turley, Dallas, TX, for plaintiffs.

Diane G. Emery, pro se, Colleyville, TX.

Susan H. Sorrells, Roger C. Diseker and Edmund G. Johnson, Kelly Hart & Hallman, Fort Worth, TX, for defendant.

### ORAL OPINION BY THE COURT

SANDERS, District Judge.

The Court is in session to announce its decision in a civil case styled *Diane G. Emery and Patricia L. Young v. Caravan of Dreams, Inc.*, Civil Action No. 94–CV–0985–H on the Court's docket.

Plaintiffs brought this lawsuit against Caravan of Dreams under § 302(b)(2)(A)(i) of Title III of the Americans With Disabilities Act, 42 U.S.C. § 12182(b)(2)(A)(i), which I will refer to as the ADA. Plaintiffs claim that Defendant discriminated against them by maintaining a policy of allowing smoking in the musical entertainment venue that Defendant operates in Tarrant County in the City of Fort Worth. Plaintiffs seek an injunction ordering Defendant to ban smoking in the theater whenever Plaintiffs wish to attend a show there.

Based on the evidence adduced at trial, the relevant statutes, the regulations, the comments to the regulations from the Department of Justice, the representations of counsel, the notes of the Court, and the notes of the law clerk, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The Court adopts the stipulations in the Pretrial Order to the extent that those stipulations are consistent with these findings.

2. Plaintiff Emery has cystic fibrosis, a progressive genetic disease of the respiratory and digestive systems. As a result of her disability, she is substantially impaired in the major life function of breathing.

3. Plaintiff Young is allergic to tobacco, ragweed, pollen, and dust mites. She has also been diagnosed as having asthma.

4. Plaintiff Young leads a normal life, according to Dr. Michael. She has worked continuously as a flight attendant for American Airlines for twenty-nine years. She is learning how to roller blade. Her allergies and asthma do not substantially impair any major life function.

5. Cigarette smoke is an irritant to mucous membranes in general, and to respiratory tissue in particular. It increases mucus production in the lungs, and patients with cystic fibrosis have a difficult time moving mucus out of their lungs. The presence of mucus in the lungs increases the chance that opportunistic bacterial infections will develop. Most cystic fibrosis patients die from opportunistic bacterial infections.

6. Plaintiff Emery's physician has advised her to avoid cigarette smoke whenever possible. After two or three breaths of cigarette smoke, Plaintiff Emery begins to wheeze and cough; this lasts from twenty to twenty-five minutes.

7. For non-smoking patrons, Defendant provides a non-smoking section in the first two rows of seats in the theater.

8. Defendant's policy of allowing smoking in all areas of the theater except for the seats reserved for non-smoking patrons has the effect of denying Plaintiff Emery access to Defendant's musical venue.

9. The only accommodation that would allow Plaintiff Emery to have access to Caravan of Dreams is a complete ban on smoking when Plaintiff attends a performance.

10. Banning smoking in the Caravan of Dreams would have a major adverse economic effect on the Defendant, and would endanger the Defendant theater's viability. Nationally known performers would not play at the club if smoking were not permitted.

11. Defendant's only requirement for admission to a show is possession of a ticket.

### CONCLUSIONS OF LAW

I turn now to my conclusions of law, and I split them into two parts.

#### A. Background Conclusions

■ 1. Defendant Caravan of Dreams is a public accommodation under the ADA. *See* 42 U.S.C. § 12181(7)(C).

■ 2. Plaintiff Young is not a person with a disability as that term is defined in the

ADA. *See* 42 U.S.C. § 12102(2). Although Young has a physical impairment, that impairment does not substantially limit any major life activity as required by the ADA.

■ 3. The regulations promulgated under the ADA define major life activities as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* 28 C.F.R. § 36.104, p. 469 (1994). As the Justice Department's explanation of the regulations notes, whether or not an allergy to cigarette smoke can be termed a disability within the meaning of the ADA requires a case-by-case analysis of whether the respiratory or neurological functioning is so severely affected that it impairs a major life function. *See* 28 C.F.R. Pt. 36, App. B., p. 585.

4. Testimony showed that Plaintiff Young is not substantially impaired in her ability to work, recreate, breathe or to have a normal life. Accordingly, she is not disabled within the meaning of the ADA. *See, e.g., Heilweil v. Mount Sinai Hospital,* 32 F.3d 718 (2nd Cir.1994), which held that a Rehabilitation Act plaintiff with asthma was not disabled because she could exercise normally and could work.

■ 5. Plaintiff Emery is a person with a disability as that term is defined under the ADA. She is substantially impaired in the major life activity of breathing.

### B. Discrimination Conclusions

1. The findings and conclusions previously made do not end the Court's inquiry. The Court must still determine whether Emery has been discriminated against on account of her disability. *See* 42 U.S.C. 12182(a).

2. Section 302(a) of Title III of the ADA establishes a general rule that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 42 U.S.C. § 12182(a). The Act then goes no to define the general as well as the specific types of discrimination that are prohibited.

■ 3. Section 302(b)(1)(D) of the Act states that "[a]n individual or entity shall not directly or through contractual or other arrangements, utilize standards or criteria or methods of administration (i) that have the effect of discriminating on the basis of disability," and makes clear that ADA Plaintiffs need not show discriminatory intent to establish a violation. The section, which is based on the Supreme Court's decision in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), establishes that a showing of discriminatory impact is sufficient.

4. However, Congress went on in section 302(b)(2)(A) of the Act to discuss four specific types of discrimination included in the general prohibition in § 302(a), delineating a defense to Plaintiffs' prima facie case in each of these four kinds of discrimination. *See* 42 U.S.C. §§ 12182(b)(2)(A)(i)–(iv).

5. Plaintiffs here have insisted that their claim is based on § 302(b)(2)(A)(i). That section states that discrimination includes "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).

■ 6. Plaintiffs argue that because Defendant allowed smoking, Defendant has imposed eligibility criteria which screen out persons with severe respiratory ailments. The Court concludes that Plaintiffs' argument amounts to a torturous misreading of the statutory language just quoted, and that it is without merit.

■ Plaintiffs' argument fails with respect to the term "criteria." No case authority being available, the Court turns first to Webster's New Universal Unabridged Dictionary, which defines criterion as "a standard of judging; any established law, rule, principle or fact by which a correct judgment may be formed." "Criteria" thus implies the necessity of making a judgment, and because judg-

ing is necessarily an active rather than a passive endeavor, the Court views the quoted section as applying only to those rules or policies that are or could be used to make a specific or conscious decision as to whether or not to permit an individual or individuals to have access to goods, services, facilities, privileges, advantages, or accommodations which are being offered in this case by Defendant.

The Department of Justice commentary on the regulations supports the reading and analysis which I have just given. The Justice Department stated that it would violate the regulation implementing this section to "bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater, or limit the seating of individuals with Down's syndrome to only particular areas of a restaurant." 28 C.F.R. Pt. 36, App. B, p. 605. Each of these decisions would involve a conscious decision directed at who will have access to the services offered by the public accommodation.

The smoking policy in question in this case clearly does not fall within the Court's construction or a fair analysis of § 302(b)(2)(A)(i). The only criterion for eligibility or access to Defendant's theater is the possession of a ticket. Plaintiffs are therefore not entitled to recover under § 302(b)(2)(A)(i).

■ 7. Plaintiffs' suit appears to come within the provisions of § 302(b)(2)(A)(ii), which provides that discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

As I understood Plaintiffs' testimony and evidence, a modification of Defendant's smoking policy would be necessary in order for Plaintiffs to take advantage of Defendant's facilities. Plaintiffs requested that Defendant modify its policy, and Defendant refused to do so. Plaintiffs do not base their case on a violation of § 302(b)(2)(A)(ii). I cover it, however, because it's another possibility here.

In the Court's view, even if Plaintiffs had relied on Section 302(b)(2)(A)(ii), their claim would fail because the section provides that a failure to make necessary modifications to policies is not discrimination under the ADA, when such modifications would fundamentally alter the services offered. It should be noted that there is some similarity between this provision and a similar phrase in the section under which Plaintiffs brought their case.

The "fundamental alteration" test is rooted in the Supreme Court's opinion in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), a Rehabilitation Act case. There the Court held that a college was not required to modify its clinical nursing program by converting it to a program of purely academic classes to accommodate a woman with a hearing impairment. The Court held that such a modification would amount to a "fundamental alteration" in the nature of the program, which was more than the Rehabilitation Act required. I understand that preceded the ADA, but it's a reference to the same phrase which makes it important to the Court.

■ 8. Defendant's President testified that banning smoking would have a major economic impact and would result in major national bands not coming to play at Caravan of Dreams. This testimony was not contradicted. The uncontroverted evidence is that the requested modification would endanger Defendant's viability as a business, and such modifications are not required. *See New Mexico Ass'n For Retarded Citizens v. New Mexico,* 678 F.2d 847 (10th Cir.1982), which held that a program modification is not required under the Rehabilitation Act if the modification would "jeopardize the overall viability" of the program at issue.

### SUMMARY

Plaintiff Young is not an individual with a disability. Plaintiff Emery is an individual

with a disability. Defendant is entitled to judgment because Plaintiffs have not established a violation of the ADA. Any finding may be deemed a conclusion. Any conclusion may be deemed a finding. The Court will enter a take-nothing judgment.

SO ORDERED.