**Gale Q. BEST, Jr., Plaintiff,**

v.

**SHELL OIL COMPANY, Defendant.**

**No. 93 C 6653.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 15, 1995.

 

---

**10.** This ruling involves the granting of plaintiffs' motion (Docket No. 42–1) and the denial of Amo- co's (Docket No. 35–1).

Alan Charles Schaefer, Schaefer & Schaefer, Hoffman Estates, IL, for Plaintiff.

Larry J. Chilton, Stevenson, Rusin, & Friedman, Chicago, IL, L. Chris Butler, Shell Oil Company, Houston, TX, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Shell Oil Company ("Shell") for summary judgment on the complaint of plaintiff Gail Q. Best, Jr.

## I. BACKGROUND

Plaintiff filed this lawsuit alleging that Shell, his former employer, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* by not allowing him to return to work after he injured his knee. Plaintiff drove a gasoline delivery truck for Shell and, while on the job in October of 1991, suffered a lateral cartilage tear. As a result, plaintiff had difficulty operating the clutch of the gasoline delivery trucks. Plaintiff, Shell, and various physicians went back and forth for about two years over plaintiff's capacity to do his job, culminating in Shell's decision to place plaintiff on an unpaid leave of absence. Plaintiff rejected this option and resigned from Shell on November 3, 1993. Shell now moves for summary judgment, arguing that plaintiff does not meet the ADA's definition of an "individual with a disability" and, therefore, cannot maintain a claim under the ADA. 42 U.S.C. § 12112(b)(2).

### A. Facts

■ We begin with a brief review of Local Rule 12's provisions regarding summary judgment. Under Local Rule 12, a party moving for summary judgment must file a:

statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law ... The statement ... shall consist of short numbered paragraphs, including with each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forward in the paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

Local Rule 12(m)(3). The party opposing the motion must then file:

a concise response to the movant's statement that shall contain:

(a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon, and

(b) a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. *All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.*

Local Rule 12(n)(3) (emphasis added). The district court, with the approval of the Seventh Circuit, has long enforced the requirements of these rules. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–922 (7th Cir.1994) (collected cases). Here, Shell has complied with the rule, but plaintiff has failed not only to file a Rule 12(n) statement, but any response whatsoever to Shell's motion.[1] Accordingly, Shell's statement of facts is deemed admitted.

Plaintiff began working for Shell as a truck driver delivering gasoline in May of 1986. The job required him to work 10½ hours per day, four days per week, and make four to six deliveries per day. Normally, plaintiff, like all Shell drivers, was assigned to a specific truck. There were occasions, however, when a driver's truck would be out of service and the driver would be assigned to a different vehicle.

As noted above, plaintiff injured his knee while working on October 20, 1991. After the injury, he had difficulty operating the clutch of his gasoline truck, experiencing pain when doing so. He could, however, drive his pick-up truck, which had an automatic transmission. Immediately after his injury, plaintiff did paper work in the office.

From November 5 to November 14, plaintiff drove a gasoline delivery truck, but once again experienced pain in his knee. From November 14 to December 10, he returned to work in the office.

On November 25, a Dr. Rollo Nesset examined plaintiff and noted that plaintiff lacked about 10 degrees of flexion due to fluid in his knee. Dr. Nesset performed arthroscopic surgery on plaintiff's knee on December 10, 1995, to remove loose cartilage and repair a lesion. Plaintiff returned to work in January of 1992, but continued to suffer pain and swelling when operating the clutch of the gasoline truck. He was often reassigned to office work. On May 7, 1992, Shell hired a Dr. Mark Levin to examine plaintiff. Plaintiff indicated at that time that his knee did not bother him when he was seated in a Mack truck seat as opposed to a Peterbilt truck seat. Shell replaced the Peterbilt seat in plaintiff's truck with a Mack seat. Thereafter, plaintiff experienced very little pain, except when circumstances dictated that he drive another truck, which occurred four to five times in the summer of 1992. Apparently, the amount of leg room in a truck had an effect on whether plaintiff experienced difficulties.

Dr. Levin examined plaintiff again on September 24, and stated that he did not expect plaintiff to show any further improvement. Pursuant to Dr. Levin's recommendation, plaintiff underwent a functional capacity evaluation. Plaintiff suffered pain and swelling in his knee after about seven minutes when he operated a leg press during that test. Dr. Levin noted that plaintiff "attempted to return to his truck driving duties. However, based on these reports and his previous exam, I feel that he would have difficulty maintaining this position at this time. The demands on his knee may be too overwhelming for him to be able to participate in those activities." (Dr. Levin Dep. at 39). The doctor recommended that plaintiff consider

---

1. Plaintiff's response to Shell's motion for summary judgment was originally due on November 6, 1995. One week after that deadline passed, plaintiff asked for an extension of time to November 15. Plaintiff failed to file his response on that date and failed to appear at a status conference regarding the pending motion on November

30. On that date, the court issued a minute order indicating that it would make its ruling based on the documents filed as of that date. This amounted only to Shell's submissions. To date, plaintiff has made no contact with the court to explain his absence, his failure to respond, or to seek another extension of time.

alternative work duties on a full-time basis in the future.

On October 20, 1992, plaintiff underwent a driving safety evaluation; the evaluator felt he should no longer be driving. Plaintiff made his last gasoline delivery for Shell the next day. On November 16, 1992, the plant manager met with plaintiff, relayed Dr. Levin's comments, and told plaintiff he was being placed on long-term disability leave. While plaintiff was on leave, Shell was unable to find a non-driving job for him. By February of 1993, however, plaintiff was able to play basketball and he felt he was fully recovered by April of 1993. In August and September of 1993, plaintiff drove gasoline delivery trucks for another company and had no problems with his knee. In November of 1993, Shell informed plaintiff that his leave of absence would begin to be without pay and, as a result, plaintiff resigned from Shell. Thereafter, plaintiff began driving a chemical delivery truck and a GMC truck; again, without consequence to his knee.

### B. *Shell's Instant Motion*

 The present posture of this case is somewhat troubling. The instant motion is the second motion for summary judgment on plaintiff's ADA claim that Shell has submitted; both have focused on the issue of whether plaintiff met the ADA's definition of an "individual with a disability." 42 U.S.C. § 12102(2). The initial motion was denied by Judge Holderman on May 26, 1995. *Best v. Shell Oil Company*, 93 C 6653, 1995 WL 330764 (N.D.Ill. May 26, 1995) (Holderman, J.) (*"Best I "*). Judge Holderman found, based on the record, that there was a question of fact as to whether plaintiff was an individual with a disability as defined by the ADA. Shell fails to address this previous ruling, aside from contending that it was at odds with established caselaw. If that was the case, Shell should have taken the appropriate measures, such as a motion under Fed.R.Civ.P. 60(b). As it stands, Judge Holderman's ruling has become the law of the case, a concept that Shell does not touch on in its motion. The doctrine of law of the case establishes a presumption that a ruling made at one stage of a proceeding will be adhered to throughout the proceeding. *Avi-*

*tia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227 (7th Cir.1995). Because the ruling was by this court, as opposed to the appellate court, we may examine it to determine whether it was wrong and rescind it if doing so would not cause undue harm to the party that benefited from it: the plaintiff. *Id.* Prior to the plaintiff's departure from these proceedings, *see* fn. 1, *supra*, the parties met with the court to discuss this case and Shell's filing of an additional motion for summary judgment that would, effectively, seek a reversal of Judge Holderman's ruling. Indeed, the plaintiff even expressed an interest, at one point, in filing his own cross motion for summary judgment. As it happened, however, plaintiff ultimately had no interest in even responding to defendant's motion. While plaintiff would be harmed by a change of Judge Holderman's ruling, it would not be *undue* harm. Plaintiff has been given every opportunity to demonstrate otherwise, but has chosen not to do so. Accordingly, we will proceed with an analysis of Shell's instant motion for summary judgment. *Id.* at 1228 (party opposing re-examination of previous ruling must prove undue harm).

## II. *ANALYSIS*

 Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court does not evaluate the weight of the evidence to determine the truth of a matter, but instead determines whether there is a genuine issue of triable fact as to the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If there is a doubt as to the existence of a material

fact, that doubt must be resolved in favor of the nonmoving party and summary judgment should be denied. *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994). Conversely, summary judgment must be entered against a party who fails to show that the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Here, the question is whether plaintiff has made out a *prima facie* case under the ADA.

Under the ADA, the plaintiff must meet the threshold burden of establishing that he is a "disabled individual." *Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995). An individual is disabled if he has: (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) if he is regarded as having such an impairment. 42 U.S.C. § 12102(2); *Roth,* 57 F.3d at 1454. Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c); *Roth,* 57 F.3d at 1454. Not every impairment that affects an individual's major life activities is a substantially limiting impairment; the impairment must significantly restrict the extent to which the individual can perform a major life activity. *Roth,* 57 F.3d at 1454.

The major life activity at issue here is working. (*See Best I,* at 6). It is important to remember that "working" under the ADA does not mean working at a particular job for a particular employer or a narrow range of jobs. *Roth,* 57 F.3d at 1454–55. When this consideration is applied to the question of whether plaintiff has met his burden of showing that he meets the first definition of disabled under the ADA—that he has a substantially limiting impairment— we must find that he has not. The record shows that plaintiff was unable to drive a certain kind of truck at Shell. He could drive another type of truck at Shell, but the nature of Shell's business was such that that vehicle was not always available. Plaintiff could also drive trucks, including gasoline

delivery trucks, at three other companies. All the record shows is that plaintiff could not drive the Peterbilt truck at Shell. As such, the record supports only a finding that plaintiff could not perform a particular job for a particular employer. This does not meet plaintiff's burden of establishing that he has a substantially limiting impairment.

There are two remaining avenues by which plaintiff can establish a *prima facie* case: he can show that he has a record of a substantially limiting impairment or that Shell regarded him as having such an impairment. Here, the evidence is more convincing. As for a record of such an impairment, Dr. Levin stated that plaintiff could not perform "truck driving duties." As for the manner in which Shell regarded plaintiff's limitations, Shell is on record as saying that it placed plaintiff on long-term disability because he was "not capable of performing the essential functions of a truck driver." *Best I,* at 7. Both pieces of evidence speak, not in the particular terms of driving a Peterbilt truck for Shell, but in the general terms of driving any type of truck. This was sufficient for Judge Holderman's ruling in *Best I,* but we must part company with that decision because we find that, even with such evidence, plaintiff has still failed to meet his burden of establishing a *prima facie* case.

Even though the record shows that plaintiff does not actually suffer from an impairment that substantially limits his ability to work, he may still succeed in establishing a *prima facie* case if he show that he has a history of or has been misclassified as having such an impairment or that he was treated as having such an impairment by his employer. 29 C.F.R. § 1630.2(k);(*l*). Under the ADA and its accompanying regulations, there are specific considerations applicable to the determination of whether an impairment substantially limits the major life activity of working. 29 C.F.R. § 1630.2(j)(3). An individual must demonstrate a significant restriction "in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Thus, the

issue here becomes whether Dr. Levin's and Shell's perhaps injudicious use of the general term "truck driver" disqualified plaintiff from a class of jobs as contemplated by the ADA and regulations. The regulations provided guidance as to whether an impairment substantially limits an individual's ability to perform a "class of jobs" by setting out the following applicable considerations:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). It is plaintiff's burden to produce evidence regarding these factors. *Bolton v. Scrivner,* 36 F.3d 939, 943–44 (10th Cir.1994); *Marschand v. Norfolk and Western Ry. Co.,* 876 F.Supp. 1528, 1540, 1542 (N.D.Ind.1995). There is, however, no evidence in the record regarding plaintiff's training, his accessible geographical area, or the number and types of jobs demanding similar training from which plaintiff's perceived or recorded impairment would disqualify him. *See Bolton,* 36 F.3d at 944. Because plaintiff would have the burden to produce such evidence at trial, he has the same burden here. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Because he has failed to do so, summary judgment is appropriate in Shell's favor.

### III. *CONCLUSION*

Review of the record shows that plaintiff has failed to make out a *prima facie* case that he meets any of the three definitions of disabled individual under the ADA. As it is plaintiff's burden to establish that he meets

on of the definitions, we must find that Shell is entitled to summary judgment on plaintiff's complaint.

For the foregoing reasons, the defendant's motion for summary judgment is hereby GRANTED.