**Jennie R. PATRICK, Plaintiff,**

v.

**SOUTHERN COMPANY SERVICES, Defendant.**

**No. CV 94–PT–1106–S.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 9, 1996.

Samuel Fisher, James Alan Mendelsohn & Amy W. Sinnott, Gordon Silberman Wiggins & Childs, Birmingham, AL, for plaintiff.

John R. Carrigan & Marcel L. Debruge, Balch & Bingham, Birmingham, AL, Chris Mitchell & Thomas A. Davis, Constangy Brooks & Smith, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on defendant's Motion For Summary Judgment filed on October 31, 1995. The court will not repeat the oft stated principles applicable to consideration of motions for summary judgment. The principles applicable to such consideration in employment discrimination cases are summarized in *Earley v. Champion Int. Corp.*, 907 F.2d 1077 (11th Cir.1990).

Plaintiff has dismissed her retaliation claim. Remaining to be considered are an American with Disabilities Act (ADA) claim, a race discrimination claim and a sex discrimination claim, all relating to the termination of plaintiff's employment.

### *ADA Claim*

It is axiomatic that before plaintiff can maintain an ADA claim, she must offer substantial evidence that she is "disabled." The initial story of ADA has been the attempt of persons to stretch the intent of ADA with regard to alleged "disabilities." Much of the criticism of the ADA in practice has come from the truly disabled who recognize that such attempted stretches can cause negative reaction to the Act and perhaps undermine its true purposes.

The ADA defines "disability" as including individuals who have (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2).

The "Findings" attendant to ADA give some indication of what type "disabilities" were intended to be covered.

42 U.S.C. § 12101

(a) **Findings**

.   .   .   .   .

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.

.   .   .   .   .

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

.   .   .   .   .

(7) individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

.   .   .   .   .

(9) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

The EEOC Compliance Manual with reference to ADA includes the following language:
*Substantially Limits*
An impairment is substantially limiting if it prohibits or significantly restricts an individual's ability to perform a major life activity as compared to the ability of the average person, in the general population to perform the same activity.

.   .   .   .   .

An impairment substantially limits an individual's ability to work if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes.

An employer regards an individual as having an impairment that substantially limits the major life activity of working if it treats the individual as having an impairment that disqualifies or significantly restricts the individual from working in a class of jobs or a broad range of jobs in various classes.

.     .     .     .     .

The ADA uses the terms "disability" and "individual with a disability" rather than the terms "handicap" and "handicapped person" or "individual with handicaps." The use of these terms "represents an effort by [Congress] to make use of up-to-date, currently accepted terminology." The change in phraseology does not reflect a change in definition or substance.

.     .     .     .     .

... [I]t often is less clear whether a person's physical or mental condition constitutes an impairment of sufficient degree to establish that the person meets the statutory definition of an individual with a "disability."

.     .     .     .     .

The first part of the definition covers persons who actually have physical or mental impairments that substantially limit one or more major life activities. The focus under the first part is on the individual, to determine if (s)he has a substantially limiting impairment. To fall under the first part of the definition, a person must establish three elements:

(1) that (s)he has a physical or mental impairment

(2) that substantially limits

(3) one or more major life activities.

.     .     .     .     .

... A history or perception of an impairment that substantially limits a major life activity is a "disability." These parts of the definition reflect a recognition by Congress that stereotyped assumptions about what constitutes a disability and unfounded concerns about the limitations of individuals with disabilities form major discriminatory barriers, not only to those persons presently disabled, but also to those persons either previously disabled, misclassified as previously disabled, or takenly perceived to be disabled.

.     .     .     .     .

The person claiming to be an individual with a disability as defined by the first part of the definition must have an actual impairment. If the person does not have an impairment, (s)he does not meet the requirements of the first part of the definition of disability. Under the second and third parts of the definition, the person must have a record of a substantially limiting impairment or be regarded as having a substantially limiting impairment.

.     .     .     .     .

This section frequently refers to the term "impairment" in the present tense. These references are not meant to imply that the determination of whether a condition is an impairment is relevant only to whether an individual meets the first part of the definition of "disability," i.e., actually has a physical or mental impairment that substantially limits a major life activity. This determination also is relevant to whether an individual has a record of such an impairment or is regarded as having such an impairment.

.     .     .     .     .

A diagnosis is relevant to determining whether a charging party has an impairment. It is important to remember, however, that a diagnosis may be insufficient to determine if the charging party has a disability. An impairment rises to the level of a disability when it substantially limits one or more major life activities.

.     .     .     .     .

Further, a characteristic predisposition to illness or disease is not an impairment. 29 C.F.R. pt. 1630 app. § 1630.2(h). A person may be predisposed to developing An illness or a disease because of factors such as environmental, economic, cultural, or so-

cial conditions. This predisposition does not amount to an impairment.

. . . . .

The mere presence of an impairment does not automatically mean that an individual has a disability.

. . . . .

The fact that a contagious disease is an impairment does not automatically mean that it is a disability. To be a disability, an impairment must substantially limit (or have substantially limited or be regarded as substantially limiting) one or more major life activities.

. . . . .

This section frequently refers to the term "substantially limits" in the present tense. These references are not meant to imply that the determination of whether an impairment is substantially limiting is relevant only to whether an individual meets the first part of the definition of "disability," i.e., actually has a physical or mental impairment that substantially limits a major life activity. This determination also is relevant to whether an individual has a record of such an impairment or is regarded as having such an impairment.

The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

ii. In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area,

from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3) (emphasis in the original).

As the regulation makes clear, an impairment that prevents an individual from working at one particular job, because of circumstances or materials unique to that job, does not substantially limit that individual's ability to work simply because (s)he cannot perform one particular job for one particular employer. See *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088, 1099, 24 EPD ¶ 31, 260 at 17,650, 1 AD Cas. (BNA) 220, 229 (D. Hawaii 1980). Rather, An individual is substantially limited in working if (s)he is prevented or significantly restricted (when compared to the average person having similar qualifications) from performing a class of jobs or a wide range of various jobs. See *id.; see also* 29 C.F.R. § 1630.2(j)(3).

. . . . .

These criteria, when read together, indicate that an impairment is a substantial limitation to working if it disqualifies An individual from a class of jobs or a broad range of jobs in various classes.

. . . . .

An assessment of whether an impairment substantially limits an individual's ability to work focuses on whether the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i).

■ What is indicated by the foregoing is that a person who merely cannot work on particular job(s) at particular place(s) is not considered to be disabled. In order to estab-

lish a disability under ADA, the impairment must substantially limit employment generally. *See Heilweil v. Mt. Sinai Hospital,* 32 F.3d 718 (2d Cir.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *Bolton v. Scrivner,* 36 F.3d 939 (10th Cir.1994); *Texler v. County of Summit Bd. Of Mental Retardation,* 25 F.3d 1050, 1994 WL 252938 (6th Cir.1994); *Welsh v. City of Tulsa,* 977 F.2d 1415 (10th Cir.1992); *E.E. Black, Ltd.,* 497 F.Supp. 1088 (D. Hawaii 1980); 29 C.F.R. § 1630.2; *Wright v. Tisch,* 45 Fair Employ.Prac.Cas. (BNA) 151, 1987 WL 109067 (E.D.Va.1987).

■ There is no issue as to plaintiff's qualifications to perform her job. There is a dispute as to whether she has an impairment that substantially limits one or more major life activities. More particularly, there is an issue as to whether plaintiff has an impairment which disqualifies her from a *class of jobs or a broad range of jobs in various classes.* While defendant argues that plaintiff's alleged "Multiple Chemical Sensitivities," illness is not generally recognized as a valid medical condition, the court does not reach that issue. See, however, *Maulding v. Sullivan,* 961 F.2d 694 (8th Cir.1992); *Summers v. Missouri Pacific Railroad System,* 897 F.Supp. 533 (E.D.Okl.1995); *Bradley v. Brown,* 42 F.3d 434 (7th Cir.1994); *La–Z–Boy Chair Co. v. Reed,* 936 F.2d 573, 1991 WL 114775 (6th Cir.1991); *Cavallo v. Star Enterprise,* 892 F.Supp. 756 (E.D.Va.1995) and *Texler v. County of Summit Bd. of Mental Retardation,* 25 F.3d 1050 (6th Cir.1994).[1]

The court also does not reach the issue of whether plaintiff's requested accommodation that she be permitted to "work out of a different office" is reasonable or would constitute an undue hardship.[2] The court does note, as suggested above and as will be hereinafter discussed, the very fact that plaintiff might have been accommodated by being moved to different building(s) has bearing on the substantial limitation issue.

The issue which the court does reach and which is decisive of the ADA claim is the issue of "substantial limitation" of a major life activity. Although required, as indicated in the above stated "Findings," the EEOC Manual quotes and persuasive case authority, there is no substantial evidence that plaintiff has an impairment which is a "substantial limitation to working." This conclusion results from the fact that there is no substantial evidence that plaintiff has an impairment which disqualifies her "from a class of jobs or a broad range of jobs in various classes." In plaintiff's brief, which the court attaches hereto, she attempts to jump to a conclusion that since she arguably could have been reasonably accommodated,[3] she is entitled to prevail on her ADA claim. Plaintiff thus attempts to avoid even a significant discussion of whether she has a "substantial limitation to working." Plaintiff has partially responded to the following cases cited by defendant: *Heilweil v. Mt. Sinai Hospital, supra,* and *Emery v. Caravan of Dreams,* 879 F.Supp. 640 (ND Texas 1995). For other cases which discuss the requirement of an ADA plaintiff to show that he or she is unable to perform a class of jobs or a broad range of jobs in various classes, *see Bolton v. Scrivner,* 36 F.3d 939 (10th Cir.1994); *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995); *Howard v. Navistar Int.,* 904 F.Supp. 922 (E.D.Wis.1995); *Layser v. Morrison,* 1995 WL 734128 (E.D.Pa.1995); *Best v. Shell Oil Co.,* 910 F.Supp. 405 (N.D.Ill. 1995); and *Farley v. Gibson Container, Inc.,* 891 F.Supp. 322 (N.D.Miss.1995). *See also Wooten v. Farmland Foods,* 58 F.3d 382, 385–86 (8th Cir.1995) where the court stated:

The ADA regulations include "working" as a "major life activity" which, if substantially limited or regarded as substantially limited by an impairment, would qualify a person as disabled within the meaning of the ADA. 29 C.F.R. § 1630.2(i). However, "working" does not mean working at a

---

1. *See also Carlin v. RFE Industries,* 1995 WL 760739 (N.D.N.Y.1995); and *McCauley v. Winegarden,* 60 F.3d 766 (11th Cir.1995).

2. *See,* however, *Vande Zande v. State of Wis., etc.,* 44 F.3d 538 (7th Cir.1995); *Carrozza v. Howard*

Co., 45 F.3d 425 (4th Cir.1995). *Cf. McCauley v. Winegarden,* 60 F.3d 766 (11th Cir.1995); and *Turco v. Hoechst,* 906 F.Supp. 1120 (S.D.Tex. 1995).

3. As stated, the court does not reach this issue.

particular job of that person's choice. *See Welsh v. City of Tulsa, Okla.*, 977 F.2d 1415, 1417 (10th Cir.1992); *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993). "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

The court concludes that plaintiff has offered no substantial evidence that she cannot perform a class of jobs or a broad range of jobs in various classes.[4]

### Race and Sex Claims

■ Plaintiff argues that her Title VII claims are a "slam dunk." Plaintiff apparently premises her "slam dunk" argument on the basis of her arguably having proved a prima facie case of sex and race discrimination. Assuming that plaintiff has proved such a prima facie case, she again attempts to leap over an essential requirement of her burden of proof. Contrary to plaintiff's suggestion, she cannot defeat a motion for summary judgment by simply offering proof of a prima facie case. Without further elaborating, the court notes the following among a plethora of cases holding to the contrary. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595–97 (11th Cir.1987); *Earley, supra; Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988); *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988); *Pace v. Southern Ry. System*, 701 F.2d 1383, 1391 (11th Cir. 1983); *Clark v. Huntsville Bd. Of Ed.*, 717 F.2d 525 (11th Cir.1983). Regardless of the possible confusion created by the case of *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), *see Walker v. Nations Bank of Florida, N.A.*, 53 F.3d 1548 (11th Cir.1995), the holding of which is not inconsistent with the herein-above cited cases. In an apparent attempt to circumvent the real holdings of *Walker* and the other cited cases, plaintiff grabs hold of the catchword 'mendacity" as used in *Hicks*. Plaintiff's "mendacity" is subjective and created out of whole cloth. It is apparent that the whole issue of plaintiff's termination arose out of plaintiff's refusal to work in Building 44. She refused to do so from November 24, 1992 to December 3, 1992. There is no evidence that any other person who similarly refused was not terminated. There is no other substantial evidence of intentional discrimination.

In essence, plaintiff's claim is an ADA claim or it is nothing. Apparently, plaintiff posits that if she was not discriminated against because of an ADA defined "disability," she has two fall back positions. This is more like attempts at illegal picks than slam dunks. The motion will be granted as to the Title VII claims.

---

4. Nowhere in her attached brief does plaintiff so argue. Interestingly, plaintiff has cited *Maulding v. Sullivan*, 961 F.2d 694 (1992). The case affirmed a grant of an employer's summary judgment on both a sex discrimination claim and an ADA claim after plaintiff refused to work in an assigned laboratory. The court stated, "We find no error in [the district court's] conclusion that her ailment would prevent her only from lab work, and that such a limitation does not substantially limit her employment as a whole."