Robert TODD, Individually and on Behalf of his Minor Child, Robert Preston Todd, and all others Similarly Situated, Plaintiffs,

v.

AMERICAN MULTI–CINEMA, INC., Cinemark USA, Inc., Regal Entertainment Group, Inc., Century Theaters, Inc., Metro Goldwyn–Mayer Distribution, Co., Twentieth Century Fox Film Corp., Paramount Pictures Corp., War-

---

ner Bros. Distributing, a Division of Time Warner Entertainment Co., L.P., Sony Pictures Classics Inc., Sony Pictures Releasing Corp., Universal City Studios L.L.L.P., Miramax Film Corp., and Buena Vista Pictures Distribution, a Division of ABC, Inc., Defendants.

Civ.A. No. H–02–1944.

United States District Court,
S.D. Texas,
Houston Division.

March 4, 2003.

Marian S. Rosen, Marian S. Rosen & Assoc., Houston, TX, for plaintiffs.

Laura Marie Franze, Akin Gump Strauss Hauer & Feld, Dallas, TX, Suzanne R. Chauvin, Akin Gump et al., J. Richard Hammett, Baker & McKenzie, Houston, Michael A. Cox, Spaulding Cox et al., Portland, OR, for defendants.

## MEMORANDUM AND ORDER

HOYT, District Judge.

## I. INTRODUCTION

This is a class action concerning whether the First Amendment and the Americans with Disabilities Act require the motion picture industry to close-caption all movies for the hearing impaired. The class action representative is Robert Todd. He claims that the Constitution and the laws of the United States mandate that all motion pictures be closed-captioned for the hearing impaired. He brings this action against two groups of defendants on behalf of his son who suffers hearing impairment, i.e., the movie theater operators and the motion picture producers.

The movie theater defendants are Century Theaters, Inc., Multi–Cinema, Inc., Cinemark USA, Inc., and Regal Entertainment Group, Inc. ("Movie Theater Operators"). The motion picture defendants are Metro–Golden Mayer Distribution Co., Twentieth Century Fox Film Corporation, Paramount Pictures Corp., Warner Brothers Distributing, Sony Pictures Classics, Inc., Sony Pictures Releasing Corp., Universal City Studios L.L.L.P., Miramax Film Corp., and Buena Vista Pictures Corp., ("Motion Picture defendants"). Both groups of defendants are movants in this motion to dismiss.

Before the Court are the defendants' collective Rule 12(b)(6) motions to dismiss the plaintiffs' case for failure to state a claim under the FEDERAL RULES OF CIVIL PROCEDURE. The Court has reviewed the papers on file and concludes that the defendants' motions to dismiss the § 1983 action should be GRANTED, and the motion picture defendants' motion to dismiss the plaintiff's ADA claim should be GRANTED.

## II. FACTUAL HISTORY & CONTENTIONS OF THE PARTIES

There are approximately 25,000,000 hearing impaired citizens in America. In the United States, approximately 6,000 movie theaters and 35,000 movie screens carry captioned motion pictures fifty-two weeks a year, seven days a week. Of these figures, only 114 theaters show closed-captioned motion pictures on some regular basis[1]. Todd, claims that there is only one theater in his hometown Houston that shows closed-captioned motion pictures. And, that theaters show only one movie, a couple of times each week. As a result, Todd brings this case on behalf of his minor son and "all others simi-

larly situated." He contends that his son and the hearing impaired are denied the movie-going experience of others not so impaired due to the lack of closed-captioned movie showings and brings this suit pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). By these allegations, the plaintiffs claim that the defendants are violating the hearing impaired's rights under the Free Speech and Assembly Clauses of the First Amendment and rights of access under the ADA.

The plaintiffs seek injunctive and declaratory relief that would require the movie industry to: (1) incorporate captioning in all movies and at all movie theaters in the United States, especially those movies marketed to children under eighteen; (2) show at least one movie during the prime hours at every movie theater with five or more screens; (3) show children's captioned movies twice on weekends; and (4) include in its advertising dates and time for closed-captioned movie showings.

### A. The Movie Theater Operators & Motion Picture Defendants' Contentions

■ The defendants advance several contentions in their respective motions to dismiss the case[2]. Both defendants move to dismiss the plaintiffs claims on the ground that the plaintiffs cannot state a claim under the ADA or § 1983. The motion picture defendants allege that they are mere sellers or producers of the movies. As such, they aver that the plaintiffs cannot state an ADA claim because Title III of the ADA applies only to public accommodations, not movie distributors or producers. 42 U.S.C. § 12182 (2002); 28 C.F.R. § 36.104. Further, the motion pictures defendants argue that the Title

1. The plaintiffs allege that only fifteen theaters in twelve states show closed-captioned movies two to four times a week; 114 theaters nationwide show such movies bi-monthly. In Texas, the plaintiffs claim that only six theaters provide closed-captioned movies; the showings are infrequent.

2. The Movie Theater Operators raised the issue of standing in its motion to dismiss. To the extent that Rob Todd himself claims an injury under the ADA, he has no standing to assert an individual claim against the defendants. *See e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–

61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The record establishes that he is not "disabled," within the meaning of the Act; therefore Todd lacks standing to assert a personal ADA claim. 42 U.S.C. § 12182(2)(A) (2002); *Mason v. United Air Lines,* 274 F.3d 314, 316 (5th Cir.2001). Further, the plaintiffs' claims for monetary damages under the ADA are dismissed. There is no remedy for monetary damages under the Act. *See* 42 U.S.C. § 12188(a). *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

III ADA claim should be dismissed because no nexus exists between them and the plaintiffs' claimed injury arising out of public accommodation. In other words, they do not offer the films directly to the public.

The movie theater defendants and motion pictures defendants together contend that the plaintiffs' claims should be dismissed because no facts are pled that support a finding of state action. The defendants argue that the Court should dismiss the plaintiffs' First Amendment against it also because they are private entities not subject to the state action doctrine and the plaintiffs' First Amendment assertion must be fairly attributable to some state authority. The defendants, thus argue that there is no public function[3] or nexus between the plaintiffs' alleged injury and the state. Thus they argue, the plaintiffs' assertion that the defendants acted "under color of statutes, ordinances, regulations, customs and usages of the United States," is a merely conclusory, unsupported by facts.

### B. *The Plaintiffs' Contentions*

The plaintiffs argue that state action is an unnecessary element for a § 1983 claim. They contend that the controlling issue here is whether their "claimed deprivation resulted from the exercise of a right or privilege having its source in State authority." According to the plaintiffs, the "color of state law" doctrine of the Civil Rights Act has been applied to restaurants, shopping centers, and private clubs, without a finding of state action or governmental entanglement.

The plaintiffs also allege that the denial of closed-captioned movies to the hearing impaired is impermissible discrimination in a "public accommodation," citing to § 12182 of the ADA. The plaintiffs response to the defendants' motion avers that § 12182 imposes a duty upon both the movie theater operator and motion picture defendants to make reasonable accommodations at the movie theaters for the hearing impaired.

Next, the plaintiffs argues the motion picture defendants' assertion that they are beyond the reach of the ADA. Instead, the plaintiffs argue that private entities are subject to the provisions of the ADA, if a nexus exists between the private entity and the place of public accommodation. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001); *Matthews v. National Collegiate Athletic Association*, 179 F.Supp.2d 1209 (E.D.Wash.2001). Thus, the plaintiffs conclude that they state an ADA claim against the motion picture defendants because they provide the service that forms the basis of the complaint.

Finally, the plaintiffs assert that the ADA is to be construed broadly because its manifest purpose is to fully incorporate the disabled into mainstream society with full access to all aspects of society. *Anderson v. Little League Baseball, Inc.*, 794 F.Supp. 342, 344 (D.Az.1992). For these reasons, the plaintiffs urge this Court to deny the defendants' motions to dismiss.

### I. STANDARD OF REVIEW

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits a defendant to move to dismiss an action on the grounds that the plaintiff failed to state a cognizable claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). The Rule tests the legal sufficiency of the claims advanced in the complaint. *Grisham v. United States*, 103 F.3d 24, 25–26 (5th Cir.1997). The Court will grant a 12(b)(6) motion to dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss under 12(b)(6), the Court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations in the pleader's favor. *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir.1996). Thus the Court's treatment of motions to dismiss under 12(b)(6) is limited to the four corners of the complaint. *See* FED. R. CIV. P. 12(b)(6). The appropriate query concerning motions to dismiss under 12(b)(6) is whether the plaintiff is entitled to offer evidence in support of her claim. *See generally Conley*

**3.** *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

*v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, to survive a 12(b)(6) motion to dismiss, the plaintiff must plead specific facts, not mere conclusory allegations. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992); *see also Henrise,* 94 F.Supp.2d at 769.

## II. ANALYSIS

### A. State Action & the First Amendment

The First Amendment prohibits government action, either federal or state, from "abridging the freedom of speech...or the right of the people peaceably to assemble." U.S. CONST. amend. I. The freedom of speech and assembly guarantees have been selectively incorporated into the Fourteenth Amendment and, thus, are applicable to the states. U.S. CONST. amend. XIV. *See also Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). However, private individuals cannot be held to violate the guarantees of the First Amendment without a showing of "State Action."

■ The plaintiffs assertion concerning their rights under "the color of federal law" fails to state a cognizable claim for several reasons. First, absent congressional legislation to the contrary, the Constitution imposes limits upon government action only whether that action is direct or indirect. *See, e.g., Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Thus, there is no nexus between the injury alleged and the basis for relief that the plaintiffs rely upon. Accepting the allegations in the plaintiffs' complaint as true does not cure the fatal defects in their pleadings.

The Court determines that the defendants do not engage in activities that are traditionally associated with sovereign governments. *See Marsh,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Jackson,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Yeager v. City of McGregor,* 980 F.2d 337 (5th Cir. 1993). Likewise, there is no nexus between the alleged wrong and the plaintiffs' basis for relief. *See Moose Lodge Number 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). Although the plaintiffs claim that the defendants are violating the spirit of ADA through their dealings and contracts, this assertion is conclusory and does not escape the policy concerns of Rule 12(b)(6).

The plaintiffs argue that the controlling issue here is whether their "claimed deprivation resulted from the exercise of a right or privilege having its source in State authority." At best, this argument is circular. "State action," by definition, is a legal fiction or misnomer. The government need not be a party to litigation to invoke state action. *See* JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 12.1 (6th ed.2000). Rather, state action is invoked when the court finds a sufficient nexus between the alleged private wrongdoer and the government, subjecting the wrongdoer to the limitations of the Constitution. *Id.* The cases that the plaintiffs' cite for their view, instead, support the Court's conclusion. *See Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)(finding state action because the concrete company was affirmatively using the preemptive strike to exclude blacks from the jury selection process); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972)[4] *Adickes v. Kress & Co.,* 398 U.S. 144, 162–69, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (holding that "under color of ...State" means that the act must have the force of law by virtue of the persistent practices of state officials); *Smith v. YMCA,* 462 F.2d 634 (5th Cir.1972) ("conduct that is formally private may become so entwined with governmental policies or so impregnated with a governmental char-

---

**4.** In *Tanner,* the Supreme Court applied the public function test in its finding that the shopping mall was not dedicated to the public, and, therefore, did not embody all of the attributes of a sovereign. In its determination, the Court relied on *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276,

90 L.Ed. 265 (1946), and *Amalgamated Food Employees Union v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); both are "state action" cases. *See Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972).

acter as to become subject to the constitutional limitations placed upon state action.").[5] The sole purpose of the public-private forum test is to determine whether the conduct complained about signals local government involvement or control. *See, e.g., Marsh,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Jackson,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Amalgamated Food Employees Union v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). The facts of the complaint, even accepted as true, do not support the plaintiffs' theories of recovery. Although the plaintiffs allege that their "privileges and immunities" have been violated under the "color of federal law" the fact remains that the conduct complained about does not arise under the Constitution or the laws of the United States. Therefore, no First Amendment violation has been properly asserted that gives rise to a cause of action.

### B. The ADA Claim

█ Likewise, the plaintiffs cannot state an ADA claim against the motion picture defendants. The "movies," per se, are not a place of a public accommodation. *See Stoutenborough v. National Football League,* 59 F.3d 580, 582–83 (6th Cir.1995). The plaintiffs attempt to establish a viable public accommodation claim by asserting that the defendants failed to use cost efficient technology that would allow the hearing impaired an equal access experience also fails. Likewise, their allegation that

because of the "very direct" relationship between the motion picture defendants a cause of action under the public accommodation Act arises is unavailing.

It is clear that the Act concerns the right to use and enjoy goods and services as they are offered to the public. Further, the ADA seeks to provide equal access to places where goods and services are provided. However, the Act does not define equal access to mean equal enjoyment. Enjoyment depends on individual ability. The plaintiffs do not cite to any case that defines equal access to include equal enjoyment.[6] This is so because the ADA does not regulate the method by which good or service are presented to the consumer. Therefore, the plaintiffs' ADA claim against the motion picture defendants does not survive the stricture of Rule 12(b)(6).

### III. CONCLUSION

In light of these findings and conclusions the Court GRANTS the defendants' motion to dismiss the plaintiff's ADA claim against the motion picture defendants. Likewise, the Court GRANTS the motion picture defendants and the movie theater operators' collective motions to dismiss the plaintiffs' § 1983 claim.

It is so ORDERED.

---

**5.** *See also Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

**6.** The plaintiffs rely on *PGA Tour v. Martin,* for their assertion that the nature of the movie business creates a public accommodation between the movie producers and the theaters. 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Assuming arguendo that the defendants are a public accommodation collectively, the plaintiffs still fail to state a claim as to the Motion Picture Defendants. Consider, for instance, *Lara v. Cinemark, USA, Inc.* where the Fifth Circuit held that movie theaters offering stadium-style seating must provide that same access to the wheelchair bound. 207 F.3d 783 (5th Cir.2000). That case turned on the line of sight offered at the theater, and the physicality of style of seating offered. *Id.* The same is true of *Johnson v. Gambrinus/Spoetzl Brewery,* 116 F.3d 1052 (5th Cir.1997)(holding

that a brewery must modify its tour "no animals" policy to accommodate persons with guide dogs). But, in *Emery v. Caravan of Dreams,* however, a theater was not required to modify its smoking policy to accommodate because doing so would fundamentally alter the nature of the service provided. 879 F.Supp. 640 (N.D.Tex.1995). Although the plaintiffs cite *Matthews v National Collegiate Athletic Assoc* for the proposition that the term "public accommodation" should be given a liberal construction, that same case noted that the CODE OF FEDERAL REGULATIONS § 36.302(a) provides that a public accommodation make *reasonable modifications* in its policies, but need not do so if the modification would "fundamentally alter" the nature of the goods or services. 179 F.Supp.2d 1209 (E.D.Wash.2001); *see also* 42 U.S.C. § 12181(7) (2002); 28 C.F.R. § 36.302(a) (2002).