Stephen E. DUFF, Plaintiff,

v.

**LOBDELL–EMERY MANUFACTURING COMPANY, Defendant.**

No. 3:95–CV–192RM.

United States District Court,
N.D. Indiana,
South Bend Division.

April 15, 1996.

Jere L. Humphrey, Kizer and Neu, Plymouth, IN, for plaintiff.

Herbert C. Snyder, Jr., Kathleen M. Anderson, Barnes and Thornburg, Fort Wayne, IN, for defendant.

### MEMORANDUM AND ORDER

MILLER, District Judge.

Stephen E. Duff was fired from his job with defendant Lobdell–Emery Manufacturing Company in June 1994. Alleging that his discharge was due to Lobdell–Emery's perception that he was disabled, Mr. Duff brought this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). The cause is before the court on Lobdell–Emery's motion for summary judgment, and on the plaintiff's motion to strike certain evidentiary material. For the following reasons, the court grants in part the plaintiff's motion to strike, and grants Lobdell–Emery's motion for summary judgment.

### I. INTRODUCTION

Stephen Duff was hired by Lobdell–Emery on June 11, 1986. He was promoted to a salaried position in the Quality Control De-

partment in 1988, and became a supervisor in 1989. On September 28, 1993, he was promoted to third-shift Superintendent, receiving a raise in salary exceeding 32 percent. Mr. Duff held that position until his termination in June 1994. As Superintendent of the third shift, Mr. Duff was responsible for the operations of Lobdell–Emery's entire factory during that shift. Several employees, including six supervisors, reported to Mr. Duff while he was the third-shift Superintendent.

On May 1, 1994, Mr. Duff became ill with chest pain, pain in his jaw, and a headache, and was taken from his home by emergency medical personnel. Mr. Duff's wife, Susan, called the Superintendent at Lobdell–Emery and reported that Mr. Duff had suffered from a massive heart attack. Ultimately, Mr. Duff discovered that he had not had a heart attack, but rather was diagnosed with abnormal blood pressure. Mr. Duff understood the cardiologist's diagnosis to mean that his physical pain resulted from stress and external pressures, rather than from a physical ailment. Mr. Duff's cardiologist kept him off work until May 17; at that point, the cardiologist permitted Mr. Duff to return to work under a 40–hour week limitation, which was to continue until May 31, 1994.

After receiving his cardiologist's slip permitting him to work under the 40–hour limitation, Mr. Duff made copies of it for Pat Williams, the safety director at Lobdell–Emery, and for Brian Tam, Mr. Duff's supervisor. Although he recalls Mr. Duff telling him about the 40–hour week limitation, Mr. Tam does not recall seeing the slip, and claims that he did not know about Mr. Duff's cardiac evaluation until about a week after Mr. Duff's termination.

After he returned to work on May 18, Mr. Duff worked more than 40 hours per week: 51.5 hours in the first week and 75.5 hours in the second week. During the second week, on May 26, Mr. Duff reminded Mr. Tam of the 40–hour limitation, and according to Mr. Duff (and not refuted by Lobdell–Emery), Mr. Tam retorted: "fuck the doctor, ... you'll work the hours I tell you to work." Mr. Duff testified at his deposition that at

that point (by May 26) his physical condition was once again declining, but he did not tell anyone at Lobdell–Emery about it. Mr. Duff was taken to the hospital again on June 6, and missed work from June 6 to June 9. Mr. Duff came to work on June 9, at Mr. Tam's request, and Mr. Tam terminated him during a meeting between the two. Mr. Duff contends that he was terminated because Lobdell–Emery regarded him as having a disability; Lobdell–Emery contends that he was terminated for performance and absence reasons.

## II. MOTION TO STRIKE

Since the court needs to establish what materials are properly before it when determining the motion for summary judgment, it is appropriate to address Mr. Duff's motion to strike first. Mr. Duff asks the court to strike three separate items Lobdell–Emery relies upon in its summary judgment motion: (1) Lobdell–Emery's answers to the plaintiff's interrogatories; (2) the errata sheet completed by Brian Tam subsequent to his deposition; and (3) the affidavit completed by Mr. Tam after his deposition.

■ Mr. Duff first argues that Lobdell–Emery improperly relies upon its own answers to the plaintiff's interrogatories to support allegations not supported by evidence in any other fashion. Mr. Duff contends that this reliance is misplaced since the person identified in the answers as the individual providing the answers has no first-hand knowledge of the events addressed in the answers. Lobdell–Emery responds that Federal Rule of Civil Procedure 33(a) does not require an individual answering interrogatories on a corporation's behalf to have first-hand knowledge of the information being provided.

■ Lobdell–Emery is correct that when answering interrogatories, a corporation may designate an individual to answer the interrogatories on behalf of the corporation even though that person has no first-hand knowledge of the information provided, but this does not end the inquiry. The mere existence of the answers to interrogatories does not make them acceptable evidence support-

ing a summary judgment motion. Rule 56(c) makes it is appropriate to rely upon answers to interrogatories while presenting a motion for summary judgment, "as long as they satisfy the other requirements in Rule 56 and contain admissible material." CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 10A FEDERAL PRACTICE AND PROCEDURE § 2722, at 51–52 (1983); see also Abbott v. Bragdon, 912 F.Supp. 580, 588 (D.Maine 1995) ("summary judgment requires affidavits, depositions or answers to interrogatories that set forth specific facts as would be admissible in evidence"); Brady v. Blue Cross and Blue Shield of Texas, Inc., 767 F.Supp. 131, 135 (N.D.Tex.1991) ("To constitute competent summary judgment evidence, however, the answers [to interrogatories] must satisfy the other requirements of Rule 56.").

■ Lobdell–Emery's answers to the interrogatories are not admissible since they are not founded upon personal knowledge and are (when offered by Lobdell–Emery) merely hearsay. If a party relies upon an opposing party's answers to interrogatories, the answers are admissible as statements of a party opponent, Fed.R.Evid. 801(d)(2); see also CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, 8A FEDERAL PRACTICE AND PROCEDURE § 2180, at 340 (1994), but a party's own answers to interrogatories are not so admissible. "Older cases said that a party could not ordinarily introduce his or her own answers to an opponent's interrogatories, since they would be self-serving statements. But the 'self-serving' nature of evidence is ordinarily no ground for exclusion, and a more correct explanation would be that a party's own statements are hearsay when offered to prove the truth of the matter asserted, and that they fall within no recognized hearsay rule." Id. at 341; see also Pender v. United States, 1995 WL 358822, *2 (N.D.Ind. May 26, 1995) ("Inadmissible hearsay contained in affidavits or other discovery materials such as interrogatories or depositions may not be considered" on summary judgment motion); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990) (refusing to consider interrogatory answer which contained hearsay). Lobdell–Emery's answers to the plaintiff's interrogatories are not

shown to be based upon personal knowledge, see Fed.R.Evid. 602, and are inadmissible hearsay. Accordingly, the court grants Mr. Duff's motion to strike with respect to these answers and disregards the answers in determining the summary judgment motion. Cf. Pender v. United States, 1995 WL 358822, *4 (allowing party to rely upon own answers to interrogatories on summary judgment when the "answers meet all the requirements of affidavits in that they are made on personal knowledge and sworn to under oath").

■ Mr. Duff also challenges Lobdell–Emery's reliance upon Brian Tam's errata sheet, which was completed after Mr. Tam's deposition. In his deposition, Mr. Tam stated that Mr. Duff was fired for poor work performance, and was then asked what supported this conclusion, to which he responded: "Well, the—it's the attitude that he presented out on the floor, his absenteeism, his working with others, There's a lot of combination there." In his errata sheet, Mr. Tam added the following testimony: "Steve's attitude of being a positive influence in the work place was gone. Lack of communication to the next shift, not passing down good lineups. If he did pass them down they would be wrong sometimes. Steve wasn't always reliable in getting jobs done on his shift." Mr. Duff contends that a deposition is "not a take-home examination," and that the additional testimony should be stricken since it attempts to merely "pile on new material now that he is free from cross-examination."

■ Lobdell–Emery contends that Mr. Tam's additional testimony complies with Federal Rule of Civil Procedure 30(e) and therefore should not be stricken. Rule 30(e) provides, in part, that "if there are changes in form or substance [to the deposition transcript]," the deponent has 30 days "to sign a statement reciting such changes and the reasons given by the deponent for making them." Fed.R.Civ.P. 30(e) (emphasis added). Lobdell–Emery argues that Mr. Tam "supplemented the 'substance' of his testimony, which is authorized by Rule 30(e). As such, no portion of the errata sheet should be stricken." It is perplexing that Lobdell–Emery relies upon this rule, since a simple re-

view of Mr. Tam's errata sheet reveals that no reason was given for the change in substance of his deposition testimony. Lobdell–Emery relies upon the case of *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398 (N.D.Ill.1993), but that case clearly states that "Fed.R.Civ.P. 30(e) allows a witness to make 'any changes in form or substance' to a deposition transcript *but requires a statement of reasons for making them."* *Id.* at 1406 (emphasis added). The rule is not onerous, for the reasons given "need not be convincing," but "there must be a reason for every change." *Id.; see also Sanford v. CBS, Inc.,* 594 F.Supp. 713, 715 (N.D.Ill.1984) ("It is not enough for the witness to give general conclusory reasons for all the changes at the end of the transcript—or, as in this case, for the witness to record no reasons at all upon the deposition but merely claim later the reasons are 'either explicit or reasonably impled from the circumstances.' "). Although neither the *Hawthorne Partners* court nor the *Sanford* court granted motions to strike the additional testimony, neither were faced with such evidence at the summary judgment stage. Because Mr. Tam did not provide an explanation for his changes to his deposition testimony at page 7 of his deposition transcript, the court grants Mr. Duff's motion to strike with respect to this evidence, which the court disregards in its summary judgment analysis.

■ Finally, Mr. Duff asks the court to strike paragraph 3 of Mr. Tam's affidavit, claiming that Mr. Tam "once again piles on allegations after leaving the cross-examiner." Because Mr. Duff has not articulated a reason why a deponent cannot subsequently also prepare an affidavit in a case, as long as the affidavit does not contradict the deposition, *see Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292–293 (7th Cir.1996), the court denies the motion to strike with respect to Mr. Tam's affidavit without further discussion.

### III.   MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates,* 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted).

■ The Americans with Disabilities Act ("ADA") provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff alleging discrimination in violation of the Act may present either direct or circumstantial evidence of discrimination. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995).

Mr. Duff does not contend that he can present direct proof of discrimination, and the parties have instead analyzed the claim using the indirect proof method established for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973) and its progeny, *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Though the Seventh Circuit has declined to formally adopt such an analysis in ADA cases, *see DeLuca v. Winer Indus., Inc.,* 53 F.3d at 793, 797; *Hedberg v. Indiana Bell Telephone Co.,* 47 F.3d 928, 933 n. 5 (7th Cir.1995), it has, like other courts, analyzed ADA cases using this method. *See, e.g. Graver v. Nat'l Eng'g Co.,* 1995 WL 443944 (N.D.Ill. July 25, 1995); *Wagner v. Kester Solder Co.,* 1995 WL 399484, at *9 (N.D.Ill. June 28, 1995).

■■■ Under the *McDonnell Douglas* analysis, a plaintiff may establish a prima facie case of discrimination by showing sufficient evidence to allow an inference of a causal link between the plaintiff's disability and termination or other negative treatment. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. A plaintiff proves a prima facie case of discrimination by showing that (1) plaintiff is a member of a protected class; (2) plaintiff's performance meets the employer's legitimate job expectations; and (3) plaintiff was terminated or treated differently.[1] *DeLuca v. Winer Indus., Inc.,* 53 F.3d at 797; *Kubsch v. National–Standard Co.,* 1995 WL 646320, *5 (N.D.Ind. Sept. 11, 1995); *Wagner v. Kester Solder Co., Div. of Litton Sys.,* 1995 WL 399484, at *9 (N.D.Ill. June 28, 1995).

■■■ If plaintiff can make out the prima facie case, a presumption of discrimination is created, which the defendant may rebut by articulating legitimate, nondiscriminatory reasons. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The burden then returns to the plaintiff to show that the reason given by the defendant is merely a pretext for discrimination, and the ultimate burden of proving intentional discrimination remains with the plaintiff throughout the case. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 253–255; *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–804, 93 S.Ct. at 1824–25.

■■■ The first element of the prima facie case requires Mr. Duff to demonstrate that he is a member of the protected class. Under the ADA, the protected class consists of "qualified individual[s] with a disability." 42 U.S.C. § 12112; *DeLuca v. Winer Indus., Inc.,* 53 F.3d at 797 n. 3. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines a "disability" in three ways: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

■■■ Mr. Duff originally claimed that he was discriminated on the basis of an actual disability, but later amended his complaint to withdraw that claim. Mr. Duff now claims only that he was discriminated on the basis of a perceived disability, and thus contends that he has a disability (and is therefore in the protected class) because he was "regarded as having" a physical or mental impairment that "substantially limits" one or more of Mr. Duff's "major life activities." 42 U.S.C. § 12102(2). "The ADA protects those 'regarded as having' a disabling impairment in order to disabuse people of myths about the disabled and prohibit discrimination against those with an impairment that does not substantially limit major life activities." *Wagner v. Kester Solder Co.,* 1995 WL 399484, *9 (N.D.Ill. June 28, 1995) (citing H.R. No. 485(II) at 53, reprinted in 1990 U.S.C.C.A.N. at 335). As the Seventh Circuit has stated:

> that he was fired because of his disability would require the plaintiff to prove his entire case rather than merely establish a prima facie case. *See, e.g., DeLuca v. Winer Indus., Inc.,* 53 F.3d at 797 (not using "because of his disability" in the prima facie case).

---

1. Lobdell–Emery suggests that the third element of the prima facie case is that the defendant terminated the plaintiff "because of his disability." Although the proposed third element finds support in *White v. York Int'l Corp.,* 45 F.3d 357, 360–361 (10th Cir.1995), it has no support in this Circuit. Indeed, to require the plaintiff to prove

[A]lthough at first glance peculiar, [the "regarded as having" a disability provision of the ADA] actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

*Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 541 (7th Cir.1995); *see also School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129–30, 94 L.Ed.2d 307 (1987) (by enacting the "regarded as" prong in the Rehabilitation Act, "Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment."); *Howard v. Navistar Int'l Trans. Corp.*, 904 F.Supp. 922, 929–930 (E.D.Wis.1995) ("This provision of the ADA is designed to combat invidious stereotypes regarding disabled members of society.").

According to the regulations promulgated by the Equal Employment Opportunity Commission under the ADA, a person is "regarded as having" an impairment if he "(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such and impairment; or (3) [does not have a qualifying impairment] but is treated by [an employer] as having a substantially limiting impairment." 29 C.F.R. § 1630.1(1).

Mr. Duff contends that Lobdell–Emery regarded him as having an impairment that substantially limited his major life activity of working.[2] When a plaintiff claims that his employer regarded him as having a qualifying impairment, "it is not enough to show that the employer perceived the employee as impaired," but rather "the perceived impairment must substantially limit a major life activity." *Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. 1528, 1540 (N.D.Ind.1995); *see also Hites v. Patriot Homes, Inc.*, 904 F.Supp. 880, 884 (N.D.Ind. 1995) (to prove that an employer regarded him as disabled, the plaintiff must prove that the defendant "knew of his injury and believed that he was substantially limited because of the injury"); *Best v. Shell Oil Co.*, 910 F.Supp. 405, 410 (N.D.Ill.1995) ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment; the impairment must significantly restrict the extent to which the individual can perform a major life activity."). With respect to the major life activity of working, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Piquard v. City of East Peoria*, 887 F.Supp. 1106, 1130 (C.D.Ill.1995) (citing 29 C.F.R. § 1630.2(j)(3)(i)); *see also Best v. Shell Oil Co.*, 910 F.Supp. at 410 ("It is important to remember that 'working' under the ADA does not mean working at a particular job for a particular employer or a narrow range of jobs.").

The proper test, therefore, "is whether the impairment, as perceived, would affect the individual's ability to find work across the spectrum of same or similar jobs." *Id.* (quoting *Partlow v. Runyon*, 826 F.Supp. 40, 45 (D.N.H.1993)). Further, "the employer does not 'regard the employee as disabled simply by finding the employee to be incapable of satisfying the singular demands of a particular job.'" *Marschand v. Norfolk &*

---

**2.** "Major life activities" are those activities that the average person in society can perform with little or no difficulty. *Miller v. Dept. of Corrections of the State of Illinois*, 916 F.Supp. 863 (N.D.Ill.1996) (*citing Haysman v. Food Lion,*

*Inc.*, 893 F.Supp. 1092, 1100 (S.D.Ga.1995)). Such activities include functions such as walking, seeing, hearing, speaking, breathing, learning, and, as alleged in this case, working. 29 C.F.R. § 1630.2(I).

*Western Ry. Co.*, 876 F.Supp. at 1540–1541 (*quoting Byrne v. Bd. of Ed. of School of West Allis–West Milwaukee*, 979 F.2d 560, 567 (7th Cir.1992)); *see also Palmer v. Circuit Court of Cook County, Social Service Dept.*, 905 F.Supp. 499, 507 (N.D.Ill.1995) ("Courts have uniformly rejected the notion that inability to work at a particular position renders a person disabled under the ADA."); 29 C.F.R. § 1630.2(j)(3). Thus, if Lobdell–Emery regarded Mr. Duff as suffering from physical impairments that Lobdell–Emery believed substantially limited Mr. Duff's ability to work (a major life activity), Mr. Duff is "disabled" under the ADA. *Piquard v. City of East Peoria*, 887 F.Supp. at 1131.

Mr. Duff concentrates his argument on "what the defendant knew and when did it know it." According to Mr. Duff, Lobdell–Emery knew the following things:

1. On May 1, 1994, Mr. Duff's wife, Susan Duff, called Lobdell–Emery and told the Plant Superintendent that Mr. Duff has been taken to the hospital with a massive heart attack.

2. On May 9, 1994, Brian Tam called the Duff residence to inquire about Mr. Duff's condition. Susan Duff told him that Mr. Duff was supposed to be off for two weeks and that it had only been one, and also that Mr. Duff had not actually had a massive heart attack. Mrs. Duff told Mr. Tam that Mr. Duff was going to have a stress test and was taking blood pressure medication and a muscle relaxer.

3. On May 17, 1994, Mr. Duff gave a copy of a doctor's slip to Brian Tam. The doctor's slip stated that Mr. Duff had been seen for "cardiac, fatigue, evaluation," and limited Mr. Duff to a 40-hour work week.

4. At some point, Mr. Duff told Jerry Gates, Lobdell–Emery's Personnel Manager, about his health problems.

5. On June 9, 1994 (the date of Mr. Duff's termination), Brian Tam called the Duff residence and asked Mrs. Duff whether the doctor had imposed any restrictions on Mr. Duff, and asked when Mr. Duff could come to work. Mr. Duff told Mr. Tam on the phone that his doctor did not feel that he was progressing the way he had thought, that his doctor wanted Mr. Duff and his wife to take stress counseling from the Family Learning Center, and that his doctor would recommend that the Family Learning Center reduce his hours and would send Lobdell–Emery a note to that effect.

From this evidence, Mr. Duff reasons that since Mr. Tam inquired frequently about Mr. Duff's condition, and inquired about Mr. Duff's medication, and because Mr. Tam's other proffered explanations for Mr. Duff's termination are "bogus" and "phony," Lobdell–Emery must have fired Mr. Duff based on a perceived disability.

However persuasive Mr. Duff's evidence and arguments may be in establishing that attendance and performance were not the real reasons for his termination, they are insufficient to allow a reasonable trier of fact to find that Lobdell–Emery regarded him as having a "physical or mental impairment that substantially limits one or more" of Mr. Duff's "major life activities." 42 U.S.C. § 12102(2). The most the evidence suggests, when viewed in a light most favorable to Mr. Duff, is that Lobdell–Emery knew that he had suffered recent heart ailments of unknown kind and severity, was taking blood pressure medicine and muscle relaxants, and was under doctor's instructions to work no more than 40 hours a week for the time being. The evidence Mr. Duff relies upon does not support an inference that Lobdell–Emery regarded Mr. Duff as having a "physical or mental impairment that substantially limits one or more" of Mr. Duff's "major life activities." 42 U.S.C. § 12102(2). Lobdell–Emery might have regarded Mr. Duff as having a disability that limited his ability to work in excess of 40 hours a week, but such a limitation is not substantial enough to rise to the level of a protected disability under the ADA. *See Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. at 1540 ("it is not enough to show that the employer perceived the employee as impaired," but rather "the perceived impairment must substantially limit a major life activity"); *id.* at 1540–1541 ("the employer does not 'regard the employ-

ee as disabled simply by finding the employee to be incapable of satisfying the singular demands of a particular job' ").

Indeed, the evidence strongly suggests that Lobdell–Emery disbelieved that Mr. Duff was impaired at all. Mr. Duff was required to work 51.5 hours in his first week back on the job, and the second week he worked 75.5 hours, all despite the doctor-imposed limitation of 40 hours. Mr. Duff contends that when he objected to Mr. Tam that he was not supposed to be working such long hours, Mr. Tam allegedly retorted: "fuck the doctor ... you'll work the hours I tell you to work." This statement does not lead to an inference that Mr. Tam considered Mr. Duff to be disabled in any way; it indicates that Lobdell–Emery believed that Mr. Duff was capable of working the hours demanded of him. All of this evidence taken together leaves no room for a reasonable fact finder to conclude that Lobdell–Emery regarded Mr. Duff as having a "physical or mental impairment that substantially limits one or more" of Mr. Duff's "major life activities."

■■■■ At most, the evidence would create an issue of fact as to whether Lobdell–Emery perceived Mr. Duff as having an impairment that rendered him incapable of working more than 40 hours in a week. Such a perception does "not equate with a perception that [Mr. Duff] had an impairment that imposed a substantial limitation on [his] ability to work generally." *Kubsch v. National–Standard Co.*, 1995 WL 646320, at *8; *see also Marschand v. Norfolk & Western Ry. Co.*, 876 F.Supp. at 1542; *Howard v. Navistar Int'l Trans. Co.*, 904 F.Supp. at 930 ("Whether [the defendant] regarded [the plaintiff] as being physically impaired is irrelevant. What matters is whether [the defendant] regarded the impairment as substantially limiting [the plaintiff's] ability to perform a major life activity."); *Shpargel v. Stage & Co.*, 914 F.Supp. 1468 (E.D.Mich.

1996) (plaintiff was not disabled under ADA even though his carpal tunnel syndrome limited his ability to work longer than 8 hours a day). An inability to work more than the normal 40–hour week, without more, is not a substantial limitation on the major life activity of working.[3] *Howard v. Navistar Int'l Trans. Co.*, 904 F.Supp. at 930 ("[T]he inability to perform one aspect of a job while retaining that ability to perform the work in general does not amount to the substantial limitation of the activity of working.").

■■■■ Even if the evidence could support an inference that Lobdell–Emery regarded Mr. Duff as having a disability that substantially limited Mr. Duff's ability to work, the evidence could not support the conclusion that Lobdell–Emery thought that this impairment was anything more than a temporary or periodic occurrence. "Intermittent, episodic impairments are not disabilities," *Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 544 (7th Cir.1995); *see also Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir.1995), so even if Lobdell–Emery regarded Mr. Duff as having an otherwise qualifying impairment, the impairment would not constitute a "disability" under the ADA.

Mr. Duff has not come forward with evidence from which he could be found to be within the class of individuals protected by the ADA. He is not a "qualified individual with a disability," 42 U.S.C. § 12112, because there is no evidence supporting a conclusion that his employer regarded him as having a "physical or mental impairment that substantially limits one or more" of his "major life activities." 42 U.S.C. § 12102(2). Because Mr. Duff is not in the protected class under the ADA, he has not established a prima facie case of discrimination, and summary judgment therefore must be granted.

### IV. CONCLUSION

Therefore, for the reasons stated in the memorandum and order, the court:

---

3. Indeed, one court has suggested that a plaintiff's failure to produce evidence relating to his vocational skills or training, the geographical area to which he has access, or the number and type of jobs which demand similar training from which he would also be. disqualified because of his disability is fatal to his case when facing

summary judgment. *Howard v. Navistar Int'l Trans. Co.*, 904 F.Supp. at 930; *see also* 29 C.F.R. § 1630.2(j)(3)(ii). Mr. Duff has presented no evidence relating to these regulatory factors, but the court does not rely on this in granting Lobdell–Emery's summary judgment motion.

(1) GRANTS IN PART the plaintiff's motion to strike (filed February 12, 1996 (# 17)), as discussed above;

(2) GRANTS the defendant's motion for summary judgment (filed January 29, 1996 (# 12)); and

(3) VACATES the jury trial set to commence May 20, 1996 and the final pretrial conference set for May 9, 1996.

The clerk shall enter judgment for the defendant and against the plaintiff.

SO ORDERED.