TJOFLAT, Circuit Judge,
dissenting:
The court states that “[t]he issue [in this appeal] is whether creating and submitting the sixty-three page errata document and then continuing to press forward with Norelus’s claims, which had been left completely unsupported once the errata document rendered her testimony useless, constituted conduct sanctionable under [28 U.S.C.] § 1927.” Ante at 485. The Am-longs[1] did prepare the sixty-three page document, which they labeled “errata sheet” (“ ‘errata sheet’ ” or “errata document”), but they did not present it to the court reporter, as Rule 30(e) of the Federal Rules of Civil Procedure requires, so it could be attached to the certificate the reporter affixed to Norelus’s deposition in accordance with Rule 30(f). In short, the sixty-three page errata document was not an errata sheet as contemplated by the Federal Rules of Civil Procedure. Rather, it constituted nothing but a written communication, a letter, from Karen Am-long to defense counsel, in which Karen *1303 Amlong informed defense counsel — in keeping with her obligations under the Florida Rules of Professional Responsibility' — 'that her client had testified falsely on deposition and provided the statements she believed her client should have made when deposed. As a consequence, the communication, instead of multiplying the proceedings, informed defense counsel that Norelus had made statements to her attorneys which, when compared to what she had said on deposition, cast substantial doubt on her credibility.
Had defense counsel explained all of this to the district court, the court would have disregarded the “errata sheet” and declared that the Norelus deposition transcript certified by the court reporter constituted Norelus’s deposition; Denny’s, Meos, and Jawaid would not have incurred $387,738 in subsequent attorneys’ fees and costs; and the court would not have sanctioned the Amlongs under 28 U.S.C. § 1927 in that amount. In essence, the Amlongs did nothing that a reasonable attorney would not have done under the circumstances. They plainly should not be held responsible for defense counsel’s errors that ultimately prolonged this litigation unnecessarily.
This dissent is organized as follows. Part I sets out Rule 30, explains the purpose of an errata sheet, and addresses how courts enforce Rule 30’s requirements pertaining to errata sheets. Part II initially establishes that Karen Amlong fully understood how, under Rule 30, an errata sheet becomes part of a deponent’s deposition and then explains that she did not intend the “errata sheet” she sent defense counsel to comply with Rule 30 and become part of Norelus’s deposition. Part III establishes that defense counsel failed to comprehend this and, thus, erroneously concluded and represented to the court that the “errata sheet” was part of Norelus’s deposition. In turn, part IV shows how defense counsel’s error led to the § 1927 sanctions at issue in this appeal. Finally, part V explains why, in light of the foregoing, levying these sanctions was improper.
I.
A.
Rule 30 governs “Depositions by Oral Examination.” Subdivisions (e) and (f), in relevant part, state the following:
(e) Review by the Witness; Changes.
(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer [(i.e., court reporter)] that the transcript or recording is available in which:
(A) to review the transcript or recording; and
(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
(2) Changes Indicated in the [Court Reporter’s] Certificate. The [court reporter] must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.
(f) Certification and Delivery; Exhibits;
Copies of the Transcript or Recording; Filing.
(1) Certification and Delivery. The [court reporter] must certify in writing that the witness was duly sworn and that the deposition accurately records the witness’s testimony. The certificate must accompany the record of the deposition. Unless the court orders otherwise, *1304 the [court reporter] must seal the deposition in an envelope ... and must promptly send it to the attorney who arranged for the transcript or recording. The attorney must store it under conditions that will protect it against loss, destruction, tampering, or deterioration.
Fed.R.Civ.P. 30(e), (f) (emphasis added).
An obvious policy underlies these provisions. They aim to ensure that a deposition transcript accurately reflects the questions put to and the answers given by the deponent because the outcome of the litigation may turn on what the deponent said. Thus, a deponent who elects to review the deposition’s transcript must submit to the court reporter, by way of an errata sheet, changes in the transcript that the deponent wishes to make and the reasons for the changes. This procedure allows the reporter to compare her shorthand notes with what she transcribed to determine whether she erred in transposing her notes.[2] The court reporter also can compare the deponent’s proposed changes with a tape recording of the deposition if, as in this case, a recording was made.[3]
Thus, implicit in subdivisions (e) and (f)’s operation is this: the court reporter considers the changes indicated in the deponent’s errata sheet; if she agrees with a posited change, she will make it on the deposition transcript; or, if she does not agree with the change, the errata sheet will indicate her disagreement.
B.
The courts, too, seek to implement Rule 30’s policy of accuracy by requiring strict compliance with the Rule’s procedural requirements. See, e.g., EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 265 (3d Cir.2010) (declaring that “[t]he procedural requirements of Rule 30(e) are clear and mandatory”); Agrizap, Inc. v. Woodstream Corp., 232 F.R.D. 491, 493 (E.D.Pa. 2006) (“[T]here is no debate that the procedural requirements of Rule 30(e) must be adhered to.”); Holland v. Cedar Creek Mining, Inc., 198 F.R.D. 651, 653 (S.D.W.Va.2001) (“This court, like most courts, will insist on strict adherence to the technical requirements of Rule 30(e).”).
The first obligation is that the errata sheet be submitted to the court reporter within Rule 30(e)’s thirty-day window absent a court-approved extension. Courts uniformly disregard untimely errata sheets, treating them as a nullity; in other words, they treat the deponent as having waived her opportunity to make changes to her testimony. E.g., Welch v. Mercer Univ., 304 Fed.Appx. 834, 838 (11th Cir. 2008) (affirming the district court’s decision that denied as untimely an errata sheet not submitted to the court reporter within Rule 30(e)’s thirty-day time frame); Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225-26 (9th Cir.2005) (excluding corrections in part because the record did not show the plaintiffs corrections were submitted within the thirty-day deadline).
*1305 From this stricture, it follows that an errata sheet that never was submitted to the court reporter' — as was the ease here— likewise is a nullity. See, e.g., Reed v. Hernandez, 114 Fed.Appx. 609, 611 (5th Cir.2004) (affirming exclusion of errata sheet that had been filed outside Rule 30(e)’s thirty-day window and never submitted to the court reporter, but rather had been attached to a response to a motion for summary judgment, because “Rule 30(e) does not provide any exceptions to its requirements”); Fogal v. Coastal Rest. Mgmt., Inc., 452 F.Supp.2d. 1286, 1298 (S.D.Ga.2004) (rejecting deposition errata sheet because it failed to comply with Rule 30(e), as it was not appended to the deposition by a certifying court reporter). In such cases, once the court has excluded the putative errata document, the deponent’s original, unamended transcript certified by the court reporter serves as the deponent’s deposition testimony.
A second procedural requirement provides that if the errata sheet makes “changes in form or substance,” the witness must “sign a statement listing the changes and the reasons for making them.” Fed.R.Civ.P. 30(e)(1)(B). “It is not enough for the witness to give general conclusory reasons for all the changes at the end of the transcript.” Sanford v. CBS, Inc., 594 F.Supp. 713, 715 (N.D.Ill.1984). Nor is it sufficient for “the witness to record no reasons at all upon the deposition but merely to claim that the reasons are ‘either explicit or reasonably implied from the circumstances.’ ” Id. (quoting Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D.Ill.1981)). Rather, “the witness must state the specific reason for the particular change after each modification.” Id. Courts often either strike errata sheets failing to include a statement of reasons explaining corrections, or order the witness to state the reasons with the requisite specificity. See, e.g., EBC, Inc., 618 F.3d at 266 (“Courts have found that the failure to provide a statement of reasons alone suffices to strike a proposed change.” (citing Holland, 198 F.R.D. at 653; Duff v. Lobdell-Emery Mfg. Co., 926 F.Supp. 799, 804 (N.D.Ind.1996))).
Finally, if the deponent submits her errata sheet to the court reporter within Rule 30’s thirty-day deadline and provides sufficient reasons for her changes, the court may order the reopening of her deposition, subjecting her to further questioning pertaining to her amended answers. Upon such an order, “ ‘[djeposing counsel can ask questions which were made necessary by the changed answers, questions about the reasons the changes were made, and questions about where the changes originated, whether with the deponent or with his attorney.’ ” Sanford, 594 F.Supp. at 715 (quoting Lugtig, 89 F.R.D. at 642). That said, the answers the witness originally gave to deposing counsel’s questions will remain part of the record and can be read at the trial. The Lugtig court explained this well:
Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made. In fact, the Rule’s instruction that the changes be made “upon the deposition” implies the original answers will remain. Policy also supports that conclusion.
The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case.
The Rule is less likely to be abused if the deponent knows that all the cireum *1306 stances — the original answers as well as the changes and the reasons — will be subject to examination by the trier of fact.
89 F.R.D. at 641-42 (citations omitted).
II.
A.
Karen Amlong knew well the purpose behind a Rule 30(e) errata sheet. She knew that an errata sheet is meant to alert the court reporter to possible errors in her notes or transcription of her notes, not to materially change sworn deposition testimony or to add responses that deposing counsel’s questions did not elicit.
Karen Amlong exhibited her knowledge of these errata sheet objectives when she represented Norelus at Norelus’s first deposition, taken on August 3, 1995. That earlier deposition was taken by Denny’s attorney, Jon Stage of Holland & Knight, before court reporter Mark Silverman.[4] At the deposition’s conclusion,[5] Karen Am-long invoked Norelus’s Rule 30(e) right to review the testimony transcript. Subsequently, on September 27, 1995, after obtaining an extension of the Rule’s thirty-day review period, Karen Amlong submitted a Rule 30 errata sheet to the court reporter, Silverman. That errata sheet was prepared after one of the Amlongs’ associates,[6] accompanied by Norelus and her brother, Anthony, who acted as Norelus’s interpreter,[7] visited Silverman’s office and reviewed the deposition transcript.
The transcript consisted of 153 pages. The errata sheet, however, posited corrections to only four of those pages and, itself, was less than one page in length. Further, only one of the corrections added words to an answer Norelus had given in response to a question posed by Stage.[8] Silverman, having received the errata sheet in compliance with Rule 30(e), attached it to the deposition and sent the deposition to Holland & Knight with his Rule 30(f) certificate.
As the next subpart makes clear, it appears obvious that when we take into account Karen Amlong’s behavior following Norelus’s first deposition, which indicated that she fully understood the operation of Rule 30, we must reach the conclusion that she did not intend Norelus’s later “errata sheet” — the one at issue here- — to function as a formal Rule 30 errata sheet with legal effect.
B.
Norelus’s second deposition commenced on January 9, 1996.[9] Karen Amlong as *1307 signed Lisa Stern, a new associate at Am-long & Amlong, the task of representing Norelus during the proceeding, and the deposition took all or part of eight days and ended on February 14, 1996. Upon the deposition’s conclusion, Stern invoked Norelus’s Rule 30(e) right to review her deposition’s transcripts. Stern needed more than thirty days to review the transcripts, and the district court granted her an extension, until June 20, 1996, to complete her review. Stern did so — under Karen Amlong’s supervision.
When finished, Stern’s review yielded the sixty-three page errata document consisting of 868 changes. Karen Amlong, however, never submitted this “errata sheet” — in the form of a signed “statement listing the changes and the reasons for making them” — to the court reporter in accordance with Rule 30(e). The errata document, as a consequence, never became part of Norelus’s deposition via the reporter’s Rule 30(f) certification. Instead, as defense counsel has declared, Karen Am-long presented the document to them alone.
It is obvious why Karen Amlong opted not to submit to the court reporter the errata document given to her by Stern: she knew that the court reporter could not possibly have made 868 transcription errors. Moreover, most of the errata document’s changes consisted of new “testimony,” that is, the document (1) materially changed answers Norelus had given to questions posed to her, and (2) contained statements unresponsive to any of the questions put to her. Amlong knew that such testimony would not qualify as “changes” under Rule 30(e).
In light of Norelus’s multitude of amendments, however, Karen Amlong faced a serious dilemma — and she knew it. Stern, in reviewing the deposition transcripts with Norelus and her Creole interpreters, Norelus’s brothers Anthony and Luke and her friend Immaculata Charles,[10] discovered that much of what Norelus was telling her (through these interpreters) proved starkly inconsistent with her original deposition statements. In other words, Stern learned that Norelus potentially had lied, and Karen Amlong realized this. In light of this discovery, Karen Amlong felt ethically obligated to reveal Norelus’s inconsistencies to defense counsel, and she used Stern’s “errata sheet” as the vehicle to make this disclosure.[11]
Karen Amlong’s sense of obligation derived from the Florida Rules of Professional Conduct. Those rules required her to inform opposing counsel of Norelus’s inconsistent statements. For instance, Florida Rule of Professional Conduct 4-3.3(a)(4), which governs an attorney’s duty of candor to a tribunal, declares: “A lawyer shall not knowingly ... permit any witness ... to offer testimony or other evidence that the lawyer knows to be false .... If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures.” Fla. Bar Reg. R. 4-3.3(a)(4) (emphasis added). This rule equally “applies when the lawyer is representing a client in an ancillary proceeding *1308 conducted pursuant to the tribunal’s adjudicative authority, such as a deposition.” Fla. Bar Reg. R. 4-3.3 cmt. 1.
Additionally, Florida Rule of Professional Conduct 4 — 3.4(b), which governs a lawyer’s obligation of candor to her opponent, works in combination with Rule 4-3.3. Rule 4-3.3 embodies the ideal that every lawyer serves, not only as an advocate, but as an officer of the court. Thus, each lawyer owes basic duties of fairness to opposing counsel. To encourage fairness to opponents, Rule 4 — 3.4(b) declares that “[a] lawyer shall not ... counsel or assist a witness to testify falsely.” Fla. Bar Reg. R. 4 — 3.4(b) (emphasis added). If a client testifies falsely, and the attorney knows this, the attorney’s professional obligation is to take reasonable steps to remedy the error. In other words, the lawyer owes her opponent a duty to disclose her client’s truthful testimony; otherwise, the attorney wrongfully “assists” his client in testifying falsely. See, e.g., Harrison v. Miss. Bar, 637 So.2d 204, 225 (Miss.1994) (finding that attorney violated Mississippi’s professional responsibility rule 3.4(b), the language of which mirrors Florida’s rule, because he failed to disclose the falsity of his client’s testimony).
Karen Amlong used the Stern-created “errata sheet” as a means to comply with these professional responsibility rules, notwithstanding the fact that it could prove detrimental to her client’s case. The document — which amounted to nothing more than a letter between opposing counsel— armed defense counsel with advance notice of what Norelus would say when called to the witness stand and thus created a significant hurdle for Amlong to overcome at trial.[12] It proves extremely difficult to envision any strategic advantage Karen Amlong gained for Norelus by way of her disclosures.
III.
On August 1, 1996, after Karen Amlong presented the errata document to counsel for defendants Denny’s, Meos, and Jawaid, those defendants jointly moved the district court to dismiss Norelus’s case on the ground that the scope and breadth of the “errata sheet” changes demonstrated that Norelus had perjured herself on deposition. Alternatively, the motion indicated that “[i]f ... th[e] Court decides not to dismiss Plaintiffs case, Defendant’s [sic] reluctantly request that this Court strike Plaintiffs errata sheet and treat Plaintiffs deposition as if she refused to sign the deposition or waived signing it.” (emphasis in original). As a final alternative, the motion requested that the court reopen Norelus’s deposition.
*1309 The substantive basis for defense counsel’s motion to strike the “errata sheet” was, in essence, that the framers of Rule 30(e)(1)(B) did not contemplate that “changes in form or substance” included statements that directly contradict those made by the witness during her deposition or those not responsive to the questions put to the witness during her deposition. As authority for this proposition, defense counsel cited Greenway v. International Paper Co., which declared that Rule 30(e) “cannot be interpreted to allow one to alter what was said under oath” through substantive amendments in an errata sheet. 144 F.R.D. 322, 325 (W.D.La.1992). According to the Greenway court, the rationale for this interpretation is that if a deponent could substantively amend her deposition testimony through an errata sheet, she “could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.” Id. In Greenway, on deposing counsel’s motion, the district court struck the errata sheet, which had been properly submitted to the court reporter under Rule 30(e), for attempting to substantively amend the deposition testimony; ordered that “the deposition ... be treated as if the plaintiff refused to sign the deposition or ha[d] waived the signing of the deposition”; and directed the court reporter to certify the deposition in accordance with its order. Id.
In the present case, defense counsel knew that the “errata sheet” had been presented only to them by Karen Amlong and not submitted to the court reporter and thereafter made part of Norelus’s deposition via the reporter’s certification under Rule 30. Defense counsel, however, failed to inform the district court of this fact — in both their motion to strike or their supporting memorandum.[13] To the contrary, they implied that the “errata sheet” had been made part of Norelus’s deposition under the court reporter’s certification. Their citation to Greenway highlights this. The Greenway errata sheet was struck for making substantive changes. Importantly, however, that errata sheet had been properly submitted to the court reporter under Rule 30(e). Logically this makes sense: in order for a court to strike a Rule 30(e) errata sheet for making substantive amendments to deposition testimony, there first must he a Rule 80(e) errata sheet — that is, one in compliance with the Rule’s procedural mandates. In the present ease, however, none existed; yet, the district court was led to believe otherwise.
Additionally, assuming that the district court might not strike the “errata sheet,” defense counsel, citing Lugtig v. Thomas, 89 F.R.D. 639 (N.D.Ill.1981), alternatively moved the court to reopen Norelus’s deposition. Lugtig, like Greenway, involved an errata sheet that contained numerous substantive changes. But, as in Greenway, the Lugtig errata sheet had properly been submitted to the court reporter under Rule 30(e). The deposed witness was the defendant, who, in submitting his changes to the reporter, failed to state the reasons for them, as required by Rule 30(e)(1)(B). *1310 The district court ordered the defendant “to have the changes he wishe[d] to make in his deposition testimony and the reasons for the changes written in the deposition at the point of change and after the original answers by the reporter.” 89 F.R.D. at 642. Depending on the extent of the changes, the court indicated that the witness may be required to submit to further questioning (on deposition). Id. Once again, however, a proper Rule 30 errata sheet remained a prerequisite to the deposition’s reopening based upon the amended answers. And, yet again, because defense counsel, here, cited this authority, the district court was led to believe that a legally effective document existed when one, in fact, did not.
IV.
The district court entertained defense counsel’s motion on paper — that is, without a face-to-face meeting with the parties’ attorneys. As a consequence, and because the motion suggested that Norelus’s errata document complied with Rule 30,[14] the district court, in an August 26, 1996 order, citing Lugtig v. Thomas, declared that “[a]fter a deponent changes a deposition in accordance mth Fed.R.Civ.P. 30(e), the deposition will be reopened if the deponent’s changes make the deposition incomplete or useless without further testimony.” Lugtig, 89 F.R.D. at 642 (emphasis added). The court has fully relayed the facts that occurred thereafter that ultimately resulted in the district court’s levying over $387,000 in sanctions against the Amlongs. Ante at 1279-81.
Had defense counsel informed the district court that Norelus’s errata document had not been submitted to the court reporter in accordance with Rule 30(e)(1)(B) and thus had not been made part of Norelus’s deposition via the reporter’s Rule 30(f) certification, the district court would have (1) concluded that the “errata sheet” amounted to nothing more than a letter from Karen Amlong to opposing counsel; (2) treated the “errata sheet” as a nullity, having no legal effect; (3) held that Norelus waived her right to read and sign her deposition; and (4) ordered that her deposition on record would consist of the original transcript as certified by the court reporter. Because of defense counsel’s failure to inform the district court of the “errata sheet’s” non-existent legal status, however, the district court never could reach the proper disposition of the defendants’ August 1, 1996 motion and the litigation continued. As the next part suggests, this is no basis on which to impose sanctions.
V.
A.
In Amlong & Amlong v. Denny’s, Inc. (“Amlong I”), this court said that “the plain language of [28 U.S.C. § 1927] imposes three requirements for an award of sanctions” under the statute:
First, the attorney must engage in “unreasonable and vexatious” conduct. Second, that “unreasonable and vexatious” conduct must be conduct that “multiplies the proceedings.” Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the “costs, expenses, and attorneys’ *1311 fees reasonably incurred because of such conduct.”
500 F.3d 1230, 1239 (11th Cir.2007) (quoting Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir.1997)).
“[A]n attorney multiplies proceedings ‘unreasonably and vexatiously’ within the meaning of the statute only when the attorney’s conduct is so egregious that it is ‘tantamount to bad faith.’ ” Id. (quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991)).
[F]or purposes of § 1927, bad faith turns not on the attorney’s subjective intent, but on the attorney’s objective conduct. The term “unreasonably” necessarily connotes that the district court must compare the attorney’s conduct against the conduct of a “reasonable” attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term “vexatiously” similarly requires an evaluation of the attorney’s objective conduct.
Id. at 1239-40 (citations omitted).
B.
With this objective standard in mind, I consider what a reasonable attorney in Karen Amlong’s position would have done when faced with the sixty-three page errata sheet Stern prepared.[15] As highlighted, the reasonable attorney would not have sent it to the court reporter because it did not propose the sort of “changes” the framers of Rule 30(e) contemplated. To the contrary, Karen Amlong did exactly what a reasonable — and ethical — lawyer would have done.
Karen Amlong did not take the Rule 30(e)(1)(B) step and send the court reporter a signed statement of changes. She, instead, provided defense counsel with the statements Norelus had made to her interpreters and, via the interpreters, to Stern. She disclosed the statements in a document that, although entitled “errata sheet,” had no more legal efficacy than a letter. In the district court’s view, and the court’s today, sending the document to defense counsel multiplied the proceedings unreasonably and vexatiously and rendered the Amlongs amenable to § 1927 sanctions.
I cannot agree. If anything, providing defense counsel with the statements was professionally appropriate — if not required. Moreover, defense counsel’s own mistakes contributed equally to multiplying the proceedings that occurred after their receipt of Norelus’s errata document. Defense counsel indicated to the district court that the errata document had, in fact, been properly submitted to the court reporter in compliance with Rule 30(e). This error prolonged the litigation that led to the defendants’ additional expenditure of over $387,738 in attorneys’ fees and costs and, ultimately, caused the district court to impose § 1927 sanctions against the Amlongs in that amount. Today, the court affirms the district court’s sanctions award and, in effect, requires the Amlongs, notwithstanding Karen Amlong’s objectively reasonable act in delivering the errata document to opposing counsel, to shoulder the costs that defense counsel’s own failings equally caused. This is improper.
*1312 VI.
For the foregoing reasons, I dissent.[16]

. I refer to the Amlong & Amlong law firm as "Amlong & Amlong” or the "Amlongs.”

. The court reporter, Jody L. Warren, took Norelus's deposition by shorthand. I cannot determine from the record on appeal whether Warren typed the deposition transcript straight from her notes or dictated the words (disclosed by her notes) to a recording machine from which she or someone else then typed the transcript.

. It is in the court reporter's self interest to resolve the differences between the witness’s proposed changes and the deposition transcript. Not only is the accuracy of the deposition transcript and, perhaps, the litigation's outcome at stake, but so is the professional reputation of the court reporter. A reporter flooded with lengthy errata sheets is one looking for some other job.

. Averil Marcus appeared at the deposition for Meos Corp., Inc. Asif Jawaid and Raheel Hameed had been added to the case as defendants on July 27, 1995, when Norelus filed her first amended complaint. They were not served with process, however, until sometime after August 3, and therefore neither of them appeared nor was represented at the August 3 proceeding. Norelus’s brother, Anthony Norelus, attended the proceeding as a spectator. A Creole language interpreter translated Stage's questions into Creole for Norelus and Norelus's answers into English.

. The deposition began at 11:29 a.m. and ended at 5:10 p.m. the same day.

. The record does not contain the associate's identity.

. Norelus lacked the funds to pay for a licensed Creole interpreter.

. As transcribed, line 21 on page 53 of the deposition reported Norelus's answer as “No” to the question: "He made an unwelcomed sexual advance toward you on the third time; you didn't welcome it, you didn't invite it, it wasn’t voluntary?” On the errata sheet, Norelus gave this answer: "It was not voluntary. It was unwelcomed. I did not invite it.”

. The deposition was taken pursuant to the notice of taking deposition that Jawaid's counsel, Conroy, Simberg & Lewis, filed on November 27, 1995. Jody L. Warren served as court reporter; Gerald Brossard func *1307 tioned as Norelus's Creole language interpreter.

. Norelus lacked funds to hire a Creole interpreter. The record suggests that all three interpreters, her brothers and Charles, were not present each time Stern and Norelus went to the court reporter's office to review the deposition transcript.

. As the court has observed, "Karen Amlong testified that the Amlongs' purpose in submitting the novella-length errata sheet was 'not to hide things from people, but to make full disclosure' in order to ‘do the best job [they] could to present as honestly as [they] could what the truth was.’ " Ante at 1286.

. The errata document, however, had dubious evidentiary value. As highlighted above, it constituted nothing more than a written communication — a letter — from Karen Am-long to defense counsel that informed them that her client had testified falsely on deposition and posited statements she thought her client should have made initially. True, Norelus signed her errata document, certifying under oath that she had “read” the deposition transcript and “that said transcript is a true and accurate recording of the proceedings had at the time and place designated, with the exceptions, if any, on the ERRATA sheet.” But Norelus could not adequately read English, which is why she needed an interpreter to tell her in Creole what the transcript revealed. Nor, for that same reason, could she effectively read the "errata sheet.” Stern prepared the errata document, and nothing in the record indicates that an interpreter read it to Norelus after Stern prepared it. It appears that the “errata sheet” reflects what one or more of the interpreters told Stern that Norelus had expressed in Creole. The interpreters were potential witnesses. They could relate, as party admissions, what Norelus told them, but neither Stern nor Karen Amlong could do so. All Stern could relate is what the interpreters told her; all Amlong could relate is what Stem told her.

. In support of their motion to strike and to show Norelus had violated the Greenway principle, defense counsel provided the court with a copy of the "errata sheet” and merely "highlighted select excerpts of [Norelus’s] changes which [were] directly relevant to her allegations to illustrate the length and breadth of [her] misrepresentations.” They did so, they claimed, because "detailing every change in [Norelus's] deposition would require volumes, rather than a memorandum of law.” As a result of this tactic, however, the court had no way in which to determine whether Norelus’s errata document had been attached to the court reporter’s Rule 30(f) certificate.

. As highlighted in part III, by citing Greenway v. International Paper Co., 144 F.R.D. 322 (W.D.La.1992), and Lugtig v. Thomas, 89 F.R.D. 639 (N.D.Ill.1981), cases in which the errata sheet had been submitted to the court reporter under Rule 30(e) and made part of the deposition under Rule 30(f), defense counsel effectively represented that the "errata sheet” at issue had likewise been submitted to the court reporter and made part of the deposition.

. One might be tempted to fault Karen Am-long for having Stern represent Norelus during the deposition at issue — including the litigation of motions relating to the talcing of the deposition. Stem was a recent law school graduate and had not been a member of The Florida Bar for more than a couple of months when Amlong assigned her to Norelus's case. Assuming that Karen Amlong's judgment in doing this demonstrated a profound lack of professional judgment, I come to the conclusion that it is irrelevant to the resolution of the issue before the court today, the issue I laid quoted at the outset.

. The court correctly states that no one — not the attorneys for the parties, the magistrate judge, the district court judge, or the Amlong I panel — has explicitly acknowledged that the "errata sheet” did not become part of Norelus's deposition in accordance with Rule 30(e) and (f). The failure to point this out by the lawyers and the judges who have handled this case does not alter the facts, (1) that the court reporter never had the opportunity to consider the transcription errors she, the reporter, made according to the errata sheet, since the Amlongs did not present the document to her in conformance with Rule 30(e)(2); and (2) that the court reporter, did not certify the deposition and the errata sheet in conformance with Rule 30(f). The issue thus becomes whether this panel is foreclosed from considering those facts.
The court holds that we are precluded from considering the issue and these Rule 30 compliance facts because the Amlongs did not point them out to the district court or cite them in their brief on appeal to this court. Ante at 487-88. (The law-of-the-case doctrine does not preclude such consideration because Amlong I did not address either expressly or by necessary implication the question of whether the errata sheet became part of Norelus's deposition in accordance with Rule 30. See e.g., Terrell v. Household Goods Carriers’ Bureau, 494 F.2d 16, 19 (5th Cir.1974) (discussing how the law of the case demands the lower court follow what has been decided at an earlier stage of the case either explicitly or by necessary implication).)
As stated in part V.A, and acknowledged by the court, ante at 1283-84, sanctions cannot be imposed under 28 U.S.C. § 1927 absent a finding of bad faith. Simple inadvertence or attorney negligence does not suffice. Salkil v. Mount Sterling Twp. Police Dep't., 458 F.3d 520, 532 (6th Cir.2006). In my view, the Amlongs were guilty of mere negligence — not bad faith — in failing to point out to the district court, and to this court on appeal, that the "errata sheet” at issue was not an errata sheet within the purview of Rule 30, but, instead, was an attempt — albeit, a highly unorthodox attempt — to inform opposing counsel of their client’s altered factual position. Defense counsel, as stressed, proved just as negligent in this regard. Had either side informed the court that the errata sheet had not been made part of Norelus’s deposition in conformance with Rule 30, § 1927 sanctions never would have been imposed.